2015 ND 214

**LaTanya GABALDON–COCHRAN,
Plaintiff and Appellant**

v.

**Jeremy COCHRAN, Defendant
and Appellee.**

No. 20140338.

Supreme Court of North Dakota.

Aug. 25, 2015.

LaTanya L. Gabaldon, Mashantucket, CT, plaintiff and appellant; self-represented.

Patti J. Jensen, East Grand Forks, MN, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] LaTanya Gabaldon, formerly known as LaTanya Gabaldon–Cochran, appeals from a district court judgment granting her a divorce from Jeremy Cochran. Gabaldon argues the court's property distribution is not equitable, the court erred in awarding Cochran a cash payment as part of the property distribution and the

court failed to include all of her educational debt in the marital estate. We affirm.

## I

[¶ 2] Gabaldon and Cochran were married in July 2011, and do not have any children together. At the time of the divorce, Gabaldon was 26 years old and Cochran was 38 years old. The parties lived in Arizona before they were married, but they relocated to North Dakota in August 2011 when Gabaldon began attending law school at the University of North Dakota. Gabaldon graduated from law school in the spring of 2014 and was employed as a judicial law clerk at the time of the divorce trial. Before the parties moved to North Dakota, Cochran was employed as a law enforcement officer by the Coconino County Sheriff's Department in Arizona, and he began working for the University of North Dakota Police Department after he relocated to North Dakota.

[¶ 3] In January 2014, Gabaldon filed for divorce. After a trial, the district court granted the parties a divorce, distributed the marital estate and ordered neither party would be awarded attorney's fees or spousal support. The court awarded Gabaldon $31,463.57 in assets, $13,149.55 in debts, and ordered she pay $17,500 to Cochran. The court awarded Cochran $60,005.41 in assets, $7,839.55 in debts, and a cash payment of $17,500 from Gabaldon. The court found the property distribution was equitable and returned to each party the assets and debts they brought into the marriage. Gabaldon received a net award of $814.02, and Cochran received a net award of $69,665.86.

## II

[¶ 4] Gabaldon argues the district court's property distribution is clearly erroneous. She claims the distribution is not equitable, the court's decision to order a cash payment to Cochran was induced by an erroneous view of the law and the court failed to include her $25,000 educational debt to the Hopi Tribe in the marital estate.

[¶ 5] Our standard for reviewing the district court's property distribution is well-established:

"A district court's distribution of marital property is treated as a finding of fact, which we review under the clearly erroneous standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. This Court views the evidence in the light most favorable to the findings, and the district court's findings of fact are presumptively correct."

*Feist v. Feist*, 2015 ND 98, ¶ 4, 862 N.W.2d 817 (quoting *McCarthy v. McCarthy*, 2014 ND 234, ¶ 8, 856 N.W.2d 762).

## A

[¶ 6] Under N.D.C.C. 14–05–24(1), the court is required to make an equitable distribution of the marital estate, including all of the parties' assets and debts. All of the parties' assets and debts, whether held jointly or individually, are marital property, and the court must determine the value of the entire marital estate before making an equitable distribution. *Lorenz v. Lorenz*, 2007 ND 49, ¶ 6, 729 N.W.2d 692; *see also Fugere v. Fugere*, 2015 ND 174, ¶ 8, 865 N.W.2d 407. The court must equitably divide the marital estate using the guidelines from *Ruff v. Ruff*, 78 N.D. 775, 784, 52 N.W.2d 107, 111 (1952), and *Fischer v. Fischer*, 139 N.W.2d 845, 852 (N.D.1966), which require the following factors to be considered:

"The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material."

*Feist*, 2015 ND 98, ¶ 6, 862 N.W.2d 817 (quoting *McCarthy*, 2014 ND 234, ¶ 9, 856 N.W.2d 762).

[¶ 7] A property division does not need to be equal to be equitable, but a substantial disparity must be explained. *Feist*, 2015 ND 98, ¶ 6, 862 N.W.2d 817. "We have often said that while a long-term marriage generally supports an equal division of property, a court may unequally divide property in a short-term marriage and award the parties what each brought into the marriage." *Fugere*, 2015 ND 174, ¶ 8, 865 N.W.2d 407 (quoting *Dieterle v. Dieterle*, 2013 ND 71, ¶ 25, 830 N.W.2d 571). Economic fault and a party's dissipation of assets also may be relevant factors for the court to consider and are grounds for an unequal distribution. *Lorenz*, at ¶ 6; *see also Crandall v. Crandall*, 2011 ND 136, ¶ 18, 799 N.W.2d 388.

[¶ 8] Gabaldon and Cochran requested each party receive the property and debt they brought into the marriage. Both parties submitted a property and debt listing under N.D.R.Ct. 8.3, and agreed on the valuation of the property and debt. At the trial, Gabaldon testified she did not want any property that was currently in Cochran's possession. She presented an exhibit listing how she would like the court to divide the parties' property and debts, and she testified her proposed distribution would result in Cochran receiving net assets and debts that are approximately $60,000 more than the assets and debts she would receive. Cochran's requested distribution was consistent with Gabaldon's proposed distribution. The district court distributed the parties' assets and debts as they requested; however, the court also ordered Gabaldon pay Cochran $17,500, and the court did not include a debt of $25,000 Gabaldon alleged she owes to the Hopi Tribe for funds provided to her for her law school education. The court explained that if it did include the alleged debt to the Hopi Tribe in the marital estate, it would allocate that debt to Gabaldon and would not change the rest of the property distribution. Gabaldon received a net award of $814.02, and Cochran received a net award of $69,665.86. The court explained that its property distribution returned to the parties the assets and liabilities they brought into the marriage and added the $17,500 cash payment to Cochran.

[¶ 9] The district court considered and made findings about each *Ruff–Fischer* factor. The court found there is a twelve-year age difference between the parties, Gabaldon will have an additional decade of work life, and her potential future earning ability far exceeds Cochran's potential future earning ability. The court considered that Gabaldon's law degree will provide her with potential earning opportunities which far exceed those Cochran possesses as a law enforcement officer and that her law degree was earned entirely during the marriage. The court found the marriage was of very short duration, supporting a distribution of the marital estate that returns the assets and debts to the respective party who brought the asset or debt into the marriage. The court also found Cochran established a career in Arizona and left Arizona to accompany Gabaldon to law school in North Dakota, which re-

quired him to start over with his career, and he cannot resume his career where he left off if he returns to Arizona. The court found Cochran's career was set back by approximately three years, which supported a greater allocation of the marital estate to him.

[¶ 10] The court made findings on each of the *Ruff–Fischer* factors and explained its unequal distribution:

"The duration of the marriage, the parties' station in life, the parties' health and physical condition, and the parties' financial circumstances at the time of the divorce all weigh in favor of an equal division of the martial estate and/or a return of the parties to their pre-divorce circumstances. The respective ages of the parties, the earning ability of the parties, the conduct of the parties during the marriage, and the disruption of [Cochran's] career support an increased allocation of marital assets to [Cochran]. None of the *Ruff–Fischer* Guideline factors favor an increased allocation of assets to [Gabaldon]. Based upon the consideration of the above factors, the undersigned determined that the above allocation of assets and debts is equitable, including the additional payment of $17,500 to [Cochran] by [Gabaldon]. The above allocation essentially returns to each party the assets and liabilities they brought into the marriage and allocates an additional payment to [Cochran] to account for the respective ages of the parties, the difference in future earning ability of the parties, the conduct of the parties during the marriage, and the disruption of [Cochran's] career."

[¶ 11] "[A] court may unequally divide property in a short-term marriage and award the parties what each brought into the marriage." *Dieterle,* 2013 ND 71, ¶ 25, 830 N.W.2d 571. Gabaldon and Cochran were married for approximately three years, which is a short-term marriage. *See Fugere,* 2015 ND 174, ¶ 12, 865 N.W.2d 407. They did not own any real property or large assets. They each were given their vehicles, their separate checking and savings accounts, their separate retirement accounts and life insurance policies and other items they owned prior to the marriage. Cochran was awarded a few items he did not bring into the marriage, including the retirement he earned while working for the University of North Dakota Police Department, a boat, fish finder, a washer and dryer and some household furniture. Gabaldon received a real estate timeshare and some household goods.

[¶ 12] The only major assets Cochran received were his retirement accounts and life insurance policy, his checking account, his vehicle and his boat. Cochran is twelve years older than Gabaldon and had more opportunity to accumulate financial assets prior to the marriage. Gabaldon is starting her career and will have more opportunity to accumulate retirement benefits and other financial assets in the future. The parties requested the court award them the assets they brought into the marriage and Gabaldon indicated she did not want any of the assets in Cochran's possession at the time of the trial. The court distributed the parties' property as they requested.

[¶ 13] Each party was assigned the debts related to their individual credit cards and student loans. The court did not include the debt Gabaldon alleges she is required to pay to the Hopi Tribe; however, the court found that if it had included that amount in the marital estate it would not change the property distribution. A district court "may consider which of the parties has incurred particular debts, and the purposes for which those debts were

incurred, in determining an equitable allocation of the responsibility for repayment." *Mertz v. Mertz*, 2015 ND 13, ¶ 24, 858 N.W.2d 292 (quoting *Neidviecky v. Neidviecky*, 2003 ND 29, ¶ 11, 657 N.W.2d 255). The parties' debts were distributed as they requested.

[¶ 14] The court distributed the parties' assets and debts as they requested and evidence in the record supports the court's distribution. Gabaldon does not explain how the court should have distributed the assets and debts differently. Gabaldon, however, does object to the court's $17,500 cash award to Cochran. She claims North Dakota law does not allow for a cash payment to be used to make an already unequal property distribution more unequal.

[¶ 15] The district court may award a cash payment as part of the property distribution. *See Linn v. Linn*, 370 N.W.2d 536, 543 (N.D.1985). Although a cash payment is often awarded to make an unequal distribution more equal, a cash award may be ordered in any case so long as the court equitably distributes the marital estate under the *Ruff–Fischer* guidelines. *See, e.g., Schiff v. Schiff*, 2013 ND 142, ¶ 10, 835 N.W.2d 810; *Holden v. Holden*, 2007 ND 29, ¶¶ 11, 13, 728 N.W.2d 312. "North Dakota law does not mandate a set formula or method to determine how marital property is to be divided; rather, the division is based on the particular circumstances of each case." *Holden*, at ¶ 10. "This Court views the evidence in the light most favorable to the district court's findings, and such findings are presumptively correct." *Feist*, 2015 ND 98, ¶ 15, 862 N.W.2d 817.

[¶ 16] The district court awarded Cochran a cash payment of $17,500. The court ordered Gabaldon pay $10,000 of the award within ten days from the date of the judgment and then pay $250 per month, including interest. The court ordered Gabaldon may pay the principal balance at any time to satisfy the obligation without penalty. The court found the additional payment to Cochran accounted for "the respective ages of the parties, the difference in future earning ability of the parties, the conduct of the parties during the marriage, and the disruption of [Cochran's] career."

[¶ 17] The district court also considered the cash payment in deciding whether to award Cochran any spousal support. Spousal support and the property distribution are interrelated and intertwined and often must be considered together. *Schiff*, 2013 ND 142, ¶¶ 8–9, 835 N.W.2d 810. The court explained that it returned the parties to their pre-marriage financial positions, but it awarded Cochran additional assets; therefore the parties' financial circumstances did not favor awarding spousal support. The court also considered that Gabaldon would be providing monthly payments to Cochran under the property distribution and she did not have significant resources to pay additional amounts for spousal support.

[¶ 18] Cochran testified the parties saved $20,000 in Gabaldon's Wells Fargo bank account for a down payment on a house. He requested the district court award him $10,000 for his half of the money saved for the down payment. Evidence established the account had approximately $13,500 at the time of the trial. Gabaldon testified she depleted the funds in the account while she was studying to take the bar exam, she was unemployed, she had significant expenses to take the bar exam, she incurred expenses to move to Connecticut for her new job and she had other monthly expenses. The court awarded the Wells Fargo account to Gabaldon, but ordered she pay $10,000 of the cash payment to Cochran within ten days.

[¶ 19]   Cochran testified he worked as a law enforcement officer in Arizona and made approximately $50,000 per year. He moved to North Dakota and initially made $36,000 per year as a rookie patrol officer at the University of North Dakota. Cochran testified he only moved to North Dakota to support Gabaldon in pursuing her education. He testified that he otherwise would have stayed in his former position in Arizona and that he missed opportunities for promotion by moving to North Dakota. Evidence established Cochran would be eligible to be rehired by his former employer if he moved back to Arizona, but he would have to start over at the beginning salary and rank as a new deputy. Cochran testified that he does not plan to stay in North Dakota.

[¶ 20]   The court stated it was returning the parties' assets and liabilities they brought into the marriage and explained it was awarding the cash payment due to the parties' ages, the difference in the future earning abilities and the disruption of Cochran's career. Although Gabaldon may dispute some of the court's findings, we do not reweigh conflicts in the evidence on appeal and we give due regard to the district court's opportunity to judge the witnesses' credibility. *Crandall,* 2011 ND 136, ¶ 19, 799 N.W.2d 388. "A choice between two permissible views of the evidence is not clearly erroneous if the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." *Lind v. Lind,* 2014 ND 70, ¶ 18, 844 N.W.2d 907 (quoting *Kostelecky v. Kostelecky,* 2006 ND 120, ¶ 8, 714 N.W.2d 845). The evidence supports the court's findings and the court's decision to award Cochran a cash payment was not induced by an erroneous view of the law.

[¶ 21]   The court applied the *Ruff–Fischer* guidelines and made specific find-ings about each factor. The evidence supports the court's findings, and we are not left with a definite and firm conviction a mistake has been made. We conclude the property distribution is not clearly erroneous.

## B

[¶ 22]   Gabaldon argues the district court erred by failing to include her $25,000 educational debt to the Hopi Tribe in the marital estate. She claims the $25,000 scholarship from the Hopi Tribe is a debt she still owes and should be included in the marital estate.

[¶ 23]   Evidence established Gabaldon received a Tribal Priority Scholarship from the Hopi Tribe for expenses incurred while she attended law school. The scholarship application states, "The recipient of a Tribal Priority Scholarship must agree to render one year of Professional service (i.e. consultation, employment, grant writing) to the Hopi Tribe or other service agencies which serve the Hopi People for each year the Award is awarded." Gabaldon claims she will have to repay the scholarship funds if she does not render a year of professional service. Gabaldon contends the debt must be included in the marital estate until she fulfills her obligation to the Hopi Tribe under the terms of the award.

[¶ 24]   The court did not include the scholarship amount in the marital estate, explaining:

"During her testimony [Gabaldon] was questioned regarding Exhibit 5[, the scholarship application]. Her assertion is that her obligation to repay $25,000 arises pursuant to the second page of the application form under the heading 'Obligation of the Recipient.' Under that paragraph the application purports to create an obligation for [Gabaldon] to complete one year of professional ser-

vice or repay the funds provided to her through the grant/scholarship program.

"[Gabaldon] could not confirm any parameters for the asserted obligation. For example, she could not say how long she would have to perform one year of professional service. She could not explain what constituted professional service. The application itself implies that professional service is something other than employment by including alternatives to employment (consulting and grant writing). The application does not address partial service; service of less than a year and whether that would reduce the debt. She has made no payments toward the debt. Additionally, the services do not have to be provided directly to the Hopi Tribe but can be provided to 'other service agencies which serve the Hopi People,' which is also undefined; potentially, that could include a significant number of federal agencies and state agencies for which [Gabaldon] could be employed and compensated. [Gabaldon] failed to provide any method to value the 'debt' other than at its full asserted value. The undersigned concludes that the obligation to render one year of professional service is too illusory and undefined to constitute a quantifiable debt."

[¶ 25] The district court explained why it was not including the alleged debt in the marital estate and the evidence supports the court's findings. Gabaldon received the funds as a scholarship. The application does not include any information about an obligation to repay the scholarship if the service obligation is not met, and Gabaldon was unable to provide any other information about the asserted obligation. She was not repaying the award. Gabaldon failed to establish there is a debt or the amount of the debt and the court did not err in failing to include the debt in the marital estate.

III

[¶ 26] We conclude the district court's property distribution is not clearly erroneous, and we affirm the judgment.

[¶ 27] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.