2016 ND 195

Tina M. RAAP f/k/a Tina M. Lenton,
Plaintiff and Appellee

v.

Lance D. LENTON, Defendant
and Appellant

and

State of North Dakota, Statutory Real
Party in Interest and Appellee.

No. 20160122.

Supreme Court of North Dakota.

Oct. 4, 2016.

Michael S. McIntee (argued), Towner, ND, for plaintiff and appellee Tina M. Raap.

Rodney E. Pagel (argued), Bismarck, ND, for defendant and appellant.

Tina M. Heinrich (on brief), Special Assistant Attorney General, Minot, ND, Child Support Enforcement Unit, Statutory Real Party in Interest and Appellee.

McEVERS, Justice.

[¶ 1] Lance Lenton appeals from the district court's amended judgment increasing his child support obligation. We reverse and remand to the district court to calculate Lenton's child support obligation in accordance with the child support guidelines.

I

[¶ 2] Tina Raap and Lance Lenton divorced in January 2011. They have one minor child. Lenton is a self-employed farmer. The district court awarded Raap primary residential responsibility of the child, and calculated Lenton's child support obligation at $1,458 per month. In the original order for child support, the district court considered Lenton's tax returns from 2005 to 2009 and found that relying only on the information contained in the five-year period of Lenton's tax returns was not representative of Lenton's income, rebutting the presumptively correct amount of his child support obligation. Instead of using Lenton's tax returns, the district court used a Farm Credit Service Statement and determined Lenton held grain in storage that he could sell at any time for profit, calculated the profit from the potential sale, and used that amount to offset his farm losses to calculate his child

support obligation. Lenton appealed the 2011 judgment, but did not challenge the district court's calculation of his child support obligation in that action. *See Lenton v. Lenton*, 2012 ND 4, 809 N.W.2d 833 (summarily affirming on the grounds the district court's property distribution was not clearly erroneous).

[¶ 3] In April 2015, Lenton requested review of his child support obligation through the Minot Regional Support Unit. The child support review conducted by the child support agency resulted in a presumptive child support amount of $637 per month. To calculate this amount, the child support agency relied on tax returns from 2012 to 2014, provided by Lenton. The child support agency averaged Lenton's income over this three-year period. The parties did not stipulate to amending the child support obligation based on the child support agency's determination. Consequently, the child support agency moved the district court to amend its judgment under N.D.C.C. § 14-09-08.8.[1] The district court held an evidentiary hearing to determine Lenton's new child support obligation. The district court found Lenton's tax returns were not a reasonable representation of his income from self-employment, and used a "Ratios & Indicators" ("R & I") document to calculate Lenton's net income. The district court entered an amended judgment setting Lenton's child support obligation at $2,400 per month. Lenton appeals.

II

[¶ 4] Lenton argues the district court's child support calculation is clearly erroneous. Particularly, he argues the district

---

1. While not at issue in this case, it is noted N.D.C.C. § 14-09-08.8 was repealed effective

August 1, 2015.

court erred when calculating his child support obligation by not relying on his tax returns, erred by using the R & I document instead of his tax returns, and erred in considering rental and other income in addition to the R & I document.

■■■ [¶ 5] Our standard of review of an appeal from child support determinations is well established:

Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. The district court errs as a matter of law if it fails to comply with the child support guidelines in determining an obligor's child support obligation.

*Halberg v. Halberg*, 2010 ND 20, ¶ 8, 777 N.W.2d 872 (quotation marks omitted) (citations omitted). In *Verhey v. McKenzie*, we expressed the importance of accurately calculating an obligor's net income under the guidelines for child support purposes, stating:

Child support determinations are governed by N.D.A.C. Chapter 75–02–04.1. A correct finding of an obligor's net income is essential to determining the proper amount of child support. To determine the proper amount of support owed, the court must first determine the obligor's net income from all sources and the number of children to be supported. After the obligor's net income is established, that amount is applied to the Guidelines to determine the proper amount of child support. The amount prescribed by the Guidelines enjoys a rebuttable presumption of correctness.

2009 ND 35, ¶ 5, 763 N.W.2d 113 (quotation marks omitted).

■■■ [¶ 6] The child support guidelines are "administrative rules established under N.D.C.C. § 14–09–09.7 and have the force and effect of law." *Pember v. Shapiro*, 2011 ND 31, ¶ 29, 794 N.W.2d 435. Therefore, we apply the rules of statutory construction to interpret administrative rules. *Id.* at ¶ 31. Words in a rule are given their plain, ordinary, and commonly understood meaning unless a contrary intention plainly appears. *See* N.D.C.C. § 1–02–02. Rules are construed as a whole and are harmonized to give meaning to related provisions. *See* N.D.C.C. § 1–02–07.

■■■ [¶ 7] The district court has discretion to calculate an obligor's child support payments through the child support guidelines under N.D. Admin. Code ch. 75–02–04.1. *Langwald v. Langwald*, 2016 ND 81, ¶ 16, 878 N.W.2d 71. However, "[e]ach child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." N.D. Admin. Code § 75–02–04.1–02(10). "Without ordering the parties to present more information and making specific findings of fact, a [district] court cannot arbitrarily ignore the guidelines simply because it feels the obligor's tax returns do not adequately reflect the obligor's income." *Kobs v. Jacobson*, 2005 ND 222, ¶ 8, 707 N.W.2d 803 (citing *Knoll v. Kuleck*, 2004 ND 199, ¶ 5, 688 N.W.2d 370; N.D. Admin. Code § 75–02–04.1–05(3)). While courts must follow the guidelines to calculate income, "courts should not allow self-employed individuals to stray too far in accepting inaccurate tax returns as the basis for computing child support." *Torgerson v. Torgerson*, 2003 ND 150, ¶ 20, 669 N.W.2d 98.

A

■ [¶ 8] Lenton argues the district court erred when it calculated his child

support obligation by not relying on his tax returns. Under the guidelines, calculations are usually based on "recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income." N.D. Admin. Code § 75–02–04.1–02(8). Section 75–02–04.1–02(7), N.D. Admin. Code, states "[i]ncome must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income." Section 75–02–04.1–01(4)(a) (2011), N.D. Admin. Code, defines gross income as "income from any source, in any form," with a specified list of exceptions. Net income from self-employment is listed among the examples of gross income. N.D. Admin. Code § 75–02–04.1–01(4)(b). Farming is a form of self-employment under N.D. Admin. Code § 75–02–04.1–01(10).

[¶ 9] Section 75–02–04.1–05, N.D. Admin. Code, governs the determination of net income from self-employment. "Net income from self-employment means total income, for internal revenue service purposes, of the obligor." N.D. Admin. Code § 75–02–04.1–05(1). The guidelines acknowledge that self-employment activities experience changes in production and income over time. N.D. Admin. Code § 75–02–04.1–05(4). "To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, *must be used* to determine self-employment income." *Id.* (emphasis added); *see Doepke v. Doepke*, 2009 ND 10, ¶ 12, 760 N.W.2d 131 (recognizing income from self-employment in farming should be averaged over a five-year period because of fluctuations in income). "When self-employment activity has not been operated on a substantially similar scale for five years, a shorter peri-

od may be used." N.D. Admin. Code § 75–02–04.1–05(4).

[¶ 10] The record reflects that only four years of tax returns were available to the district court, 2011 to 2014, with no explanation why the 2010 tax return was not available. The district court considered the three-year period of tax returns as submitted to the child support unit by Lenton, which resulted in a presumptively correct child support amount of $637 a month. The district court found those returns did not reasonably reflect Lenton's ability to pay, rebutting the presumptively correct amount. The district court made several findings regarding the tax returns:

> Even a cursory examination of the tax returns yields but one conclusion, they are wholly inaccurate portrayals of Lance Lenton's actual financial situation....
>
> . . .
>
> To believe these income tax returns are an accurate portrayal of Lance Lenton's financial situation stretches credulity beyond the breaking point....
>
> Reliance upon Lance Lenton's tax returns to establish his actual income for child support purposes is an exultation of form over substance.

It is clear that the district court did not find the tax returns reliable for purposes of determining income for child support. The district court's findings are supported by the record, and are not clearly erroneous.

### B

[¶ 11] The district court used information contained in the R & I document over a three-year period to calculate Lenton's child support amount. Lenton argues the district court erred in using the R & I document to calculate his self-employment income to determine his child support obligation. "If the tax returns are not avail-

able *or* do not reasonably reflect the income from self-employment, profit and loss statements which more accurately reflect the current status must be used." N.D. Admin. Code § 75–02–04.1–05(3) (emphasis added). The guidelines do not define profit and loss statements. According to *Black's Law Dictionary*, a profit and loss statement, termed an "income statement," is "[a] statement of all the revenues, expenses, gains, and losses that a business incurred during a given period." 833 (9th ed.2009). The district court relied on a R & I document. Among other things, the R & I document lists gross revenue, operating expenses, depreciation, and interest payments for Lenton's farming operation. The district court did not err by relying on the type of document presented. However, in *Entzie v. Entzie*, this Court held:

> Net income from self-employment is total income for internal revenue service purposes. The court must average the past five years of a self-employed obligor's financial information, if self-employment activities have been operated on a substantially similar scale for the most recent five years. If self-employment activities have not been operated on a substantially similar scale in the most recent five years, the court may use a shorter period of time.

2010 ND 194, ¶ 8, 789 N.W.2d 550 (citations omitted).

[¶ 12] Unlike *Entzie*, here, the district court made findings explaining why the tax returns did not reasonably reflect Lenton's income. However, the district court did not consider either Lenton's tax returns or other financial information for the previous five-year period. The district court gave no reason for using a shorter time period. Under N.D. Admin. Code § 75–02–04.1–05(3), the district court must use profit and loss statements if the tax returns do not reasonably reflect an obligor's net income

from self-employment. However, the district court must make this determination by averaging the financial information over the most recent five-year period under N.D. Admin. Code § 75–02–04.1–05(4). The district court must find Lenton's financial information not reasonably available, or make a determination that the self-employment activity was not being undertaken on a substantially similar scale before using a shorter time period. *See id.* The district court cannot arbitrarily ignore the guidelines. *See Kobs*, 2005 ND 222, ¶ 8, 707 N.W.2d 803. Therefore, the district court erred as a matter of law by failing to either average Lenton's tax returns or financial information over the most recent five-year period, or by failing to make specific findings that Lenton's self-employment activity has not been operated on a substantially similar scale before using a shorter period of time. *See Entzie*, 2010 ND 194, ¶ 9, 789 N.W.2d 550.

C

[¶ 13] Lenton argues the R & I document is inaccurate, the district court erred by counting grain held in storage as income for the purposes of calculating his child support obligation, and claims the district court may have counted some of his income twice by using the R & I document.

[¶ 14] The R & I document is based on information that Lenton provided to Farm Credit Services as part of his farming operation. Lenton did not object to the admission of the R & I document. It is for the district court to weigh the evidence, and we decline to reweigh the evidence. *See Jelsing v. Peterson*, 2007 ND 41, ¶ 11, 729 N.W.2d 157. The district court did not find the grain in storage was income. Nor did the district court make a finding that Lenton manipulated his income to alter his child support obligation. *See Doepke*, 2009 ND 10, ¶ 13, 760 N.W.2d 131

(holding the district court did not err when it made specific findings that the obligor did not manipulate his income to lower his child support obligation by holding grain in storage until he can get the most money for it). Rather, the district court used the increase of the value of the grain in storage as part of its rationale for finding the tax returns do not reasonably reflect Lenton's income. However, the district court, after finding the tax returns "wholly inaccurate" used information from the tax returns in addition to the R & I document to supplement the amount of Lenton's income. We are unable to understand the district court's rationale why the tax returns found to be inaccurate should be used to increase Lenton's income. On remand, if the district court relies on information from both the tax returns and the R & I document, it must explain its rationale for using information from the tax returns.

## III

[¶ 15] The district court erred as a matter of law by failing to calculate Lenton's self-employment income according to the child support guidelines. Therefore, we reverse and remand to allow the district court to calculate Lenton's child support obligation in accordance with the child support guidelines.

[¶ 16] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.