2017 ND 242

**Shawn D. BREW, Plaintiff and Appellant**

v.

**Jennifer E. BREW, Defendant and Appellee**

No. 20170073

Supreme Court of North Dakota.

Filed 10/17/2017

Dennis W. Lindquist, Dickinson, N.D., for plaintiff and appellant.

Patricia E. Garrity, Bismarck, N.D., for defendant and appellee.

McEvers, Justice.

[¶ 1] Shawn Brew appeals from a judgment granting him a divorce from Jennifer Brew, distributing their marital property, and ordering him to pay child support. Shawn Brew argues the district court's property distribution is inequitable, the court improperly calculated his child support obligation, and the court erred in ordering him to pay attorney's fees. We affirm.

I

[¶ 2] Shawn and Jennifer Brew were married in July 1997. They have two children together. The older child was born in 1998 and was still a minor at the time of trial. They owned a farming and ranching operation and a trucking business.

[¶ 3] In September 2015, Shawn Brew sued Jennifer Brew for divorce. In May 2016, Jennifer Brew moved to compel discovery, claiming she had made numerous attempts to get Shawn Brew to respond to interrogatories and demands for production of certain documents before seeking court intervention. The district court granted Jennifer Brew's motion to compel and ordered Shawn Brew to provide Jennifer Brew with certain requested documents. The court also ordered Shawn Brew to pay Jennifer Brew $500 in attorney's fees under N.D.R.Civ.P. 37(a)(5)(A) for failing to timely provide discovery responses.

[¶ 4] On August 7, 2016, Shawn Brew filed a pre-trial statement and requested the court award equal residential responsibility of the children. On August 8, 2016, a pretrial conference was held. On August 15, 2016, Jennifer Brew moved to bifurcate the issue of primary residential responsibility, claiming Shawn Brew disclosed for the first time at the pretrial conference that he intended to contest primary residential responsibility of the children and

no discovery about the issue had been done. On August 16, 2016, the parties filed a stipulation, agreeing Jennifer Brew would have primary residential responsibility and decision-making authority of the children. A trial was held on the remaining issues, including property distribution, spousal support, and child support.

[¶ 5] The district court granted the parties a divorce. The court distributed the marital property, including 603 acres of farmland, and ordered Shawn Brew to receive a net award of $660,886 and Jennifer Brew to receive a net award of $732,258. The court awarded primary residential responsibility of the parties' children to Jennifer Brew and ordered Shawn Brew to pay $2,998 per month in child support for two children, which would be reduced to $1,949 per month after the older child turns eighteen or is no longer attending high school. The court found Jennifer Brew was in need of spousal support but Shawn Brew did not have the ability to pay, and the court reserved jurisdiction to potentially award spousal support in the future. The court ordered Shawn Brew to pay $5,000 in attorney's fees.

[¶ 6] Shawn Brew filed an "Opposition to Court's Property Distribution," arguing the property was not properly distributed and requesting the court reconsider its distribution of the farmland. The court treated Shawn Brew's filing as a motion to reconsider and denied the motion.

II

[¶ 7] Shawn Brew argues the district court erred in distributing the marital property. He claims the court relied on an unwarranted presumption and the distribution was not equitable.

A

[¶ 8] Shawn Brew claims the district court relied on an unwarranted presump-

tion when it divided the parties' farmland. He contends the court announced at a pretrial conference that there was a presumption Jennifer Brew should be awarded most of the farmland because the land had been in her family for years and the court placed a burden of proof on him to rebut that presumption.

[¶9] Shawn Brew quoted portions of a transcript for a pretrial conference in his brief and included a page from the transcript in his appendix in support of his argument that the district court relied on a presumption. The transcript is not included in the record. Parties may only include items in the appendix that are part of the record. N.D.R.App.P. 30(a)(1). This Court will not consider documents in an appendix that are not in the certified record. *Ihli v. Lazzaretto*, 2015 ND 151, ¶ 21, 864 N.W.2d 483; *State v. Williams*, 2015 ND 297, ¶ 11, 873 N.W.2d 13. The appellant assumes the consequences and risks of failing to file a transcript. *Cullen v. Williams Cty.*, 446 N.W.2d 250, 252 (N.D. 1989).

[¶10] Jennifer Brew moved to strike the parts of Shawn Brew's brief and appendix referring to the pretrial conference transcript, and she requested attorney's fees. This Court has discretion in deciding whether to administer sanctions for failing to comply with the Rules of Appellate Procedure. N.D.R.App.P. 13; *Ihli*, 2015 ND 151, ¶ 21, 864 N.W.2d 483. We grant Jennifer Brew's motion to strike, and we will not consider the documents in the appendix that are not included in the record or Shawn Brew's references to those documents, but decline to impose sanctions.

[¶11] "When the record does not allow for intelligent and meaningful review of an alleged error, the appellant has not carried the burden of demonstrating reversible error." *Holden v. Holden*, 2007 ND 29, ¶ 7, 728 N.W.2d 312 (quoting *Lin-*

*rud v. Linrud*, 552 N.W.2d 342, 345 (N.D. 1996)). Without the transcript of the pretrial conference there is no evidence in the record the district court relied on an improper presumption in distributing the farmland.

### B

[¶12] Shawn Brew argues the property distribution is inequitable because Jennifer Brew received a net award worth $71,372 more than the property he was awarded. He contends the court erred by finding the farmland the parties purchased from Jennifer Brew's father was a gift and awarding Jennifer Brew 447 of the 603 acres of farmland.

[¶13] A district court's property division is treated as a finding of fact, which is reviewed under the clearly erroneous standard of review. *Gabaldon-Cochran v. Cochran*, 2015 ND 214, ¶ 5, 868 N.W.2d 501. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, after reviewing all of the evidence, we are left with a definite and firm conviction a mistake has been made. *Id.* "The district court's choice between two permissible views of the evidence is not clearly erroneous." *Rebel v. Rebel*, 2016 ND 144, ¶ 9, 882 N.W.2d 256.

[¶14] When a divorce is granted, the district court is required to make an equitable distribution of the parties' assets and debts, whether held jointly or individually. N.D.C.C. § 14-05-24(1); *Allmon v. Allmon*, 2017 ND 122, ¶ 7, 894 N.W.2d 869. The court must apply the *Ruff-Fischer* guidelines in dividing the marital property and consider the following factors:

[T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life,

the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

*Allmon*, at ¶ 7 (quoting *Rebel v. Rebel*, 2013 ND 116, ¶ 7, 833 N.W.2d 442).

[¶ 15] A property division does not need to be equal to be equitable, but a substantial disparity must be explained. *Gabaldon-Cochran*, 2015 ND 214, ¶ 7, 868 N.W.2d 501. A long-term marriage generally supports an equal property division. *Rebel*, 2016 ND 144, ¶ 8, 882 N.W.2d 256. "There is no set formula or method for distributing marital property; rather, an equitable property distribution is based on the particular circumstances of each case." *Weigel v. Weigel*, 2015 ND 270, ¶ 10, 871 N.W.2d 810. Economic fault and dissipation of assets are relevant factors the court may consider and are grounds for an unequal distribution. *Allmon*, 2017 ND 122, ¶ 8, 894 N.W.2d 869.

[¶ 16] The district court included all of the parties' assets and debts in the marital estate and made findings about the *Ruff-Fischer* factors. The court found the marriage was a long-term marriage, Shawn Brew is a farmer and operates a trucking business, and Jennifer Brew works for the county and part-time for a sewing business. The court found both parties are less financially secure since the separation, their financial needs are similar, and both parties are in good health. The court allocated $909,544 in assets and $248,658 in debt to Shawn Brew, for a net award of $660,886. The court allocated $870,917 in assets and $138,659 in debt to Jennifer Brew, for a net award of $732,258.

[¶ 17] The court considered whether there was evidence to support a deviation from an equal division and explained:

Perhaps the most significant evidence in support of a deviation from an equal division is the fact that substantially all of the agricultural real estate owned by the parties came by way of a purchase of 603 acres of farmland, which has been in Jennifer's family now for three generations. Those 603 acres were purchased in 1999 from Jennifer's father for $100,000. The parties have essentially stipulated that such farmland is now worth more than 10 times that figure. Jennifer testified, and Shawn did not dispute, that the purchase price was extremely favorable to the parties as buyers at that time of the purchase. While there is no evidence in the record of the appraised value of that farmland in 1999, the Court is satisfied and finds that the purchase price was significantly below then prevailing prices.

The court also found the parties' marital home was gifted to them by Shawn Brew's mother, and the court awarded the home to him. The court said a division of assets more favorable to the party to whom the gift was made may be appropriate. The court noted the parties agreed Jennifer Brew would keep the mineral interests her father conveyed to her and Shawn Brew would be entitled to the proceeds from a mineral trust created by his mother, even though the income from the trust had historically been greater than the income from Jennifer Brew's minerals and Shawn Brew was receiving significantly greater value and likely greater income as a result. The court also found both parties agreed the trucking business should be awarded to Shawn Brew, neither party offered evidence to establish the value of the busi-

ness, and the business provided the "bulk" of the parties' income in recent years. The court found the farming operation had consistently shown a loss, even when adding in the depreciation and income from renting out the agricultural land. The court said Shawn Brew would likely realize a greater income than Jennifer Brew in the future from the trucking business, especially if he was also awarded a substantial portion of the farming operation. The court found the parties leased out a substantial portion of the farmland after the trucking business was formed, Jennifer Brew focused more on the farming and ranching operation and built the parties' cattle herd, and Shawn Brew focused more on the trucking business and did not consider farming his main source of income. The court found Shawn Brew dissipated marital assets by losing $6,600 to an internet dating scam and he should be allocated that amount. The court found these facts "persuaded the Court that it is appropriate to award to Jennifer the more substantial portion of the agricultural real estate obtained through her father and a greater portion of the parties' net assets."

[¶ 18] The district court explained its unequal distribution at great length. The court considered the source of the property and awarded both parties property they received from family members. We have said all property must be included in the marital estate, even if it was a gift or inherited, but the property's origin may be considered in equitably dividing the estate. *Feist v. Feist*, 2015 ND 98, ¶ 6, 862 N.W.2d 817. The court explained the parties acquired 603 acres of farmland from Jennifer Brew's father for an extremely favorable purchase price, which could be viewed as a partial gift due to the favorable price. The court awarded both parties a portion of the 603 acres of farmland, but awarded Jennifer Brew a greater share of the property. The court did not err in considering the source of the property when it divided the marital estate.

[¶ 19] Moreover, the court considered other factors in awarding Jennifer Brew a greater share of the farmland. The *Ruff-Fischer* factors require the court to consider the parties' financial circumstances, the value of the property, and the property's income-producing capacity in dividing the property. *See Langwald v. Langwald*, 2016 ND 81, ¶ 10, 878 N.W.2d 71. The court explained Jennifer Brew was more focused on the farming and ranching operation, she was in charge of breeding their cattle and built the parties' herd, and Shawn Brew was more focused on his trucking business. The court also explained the farming operation had not been profitable in the past and was not likely to be in the future, and Shawn Brew's trucking business had been profitable historically and he is likely to realize a greater income than Jennifer Brew will in the future. Shawn Brew was awarded the assets for the trucking business, which the court found was the parties' primary source of income in the recent past.

[¶ 20] The assets Shawn Brew received were worth more than the assets Jennifer Brew received, and he also received the debt associated with the property he received, which was a greater share of the parties' debts. Shawn Brew testified he was willing to assume all of the debt the court allocated to him, including the parties' largest debt for an operating and equipment loan, which he testified was his debt. Jennifer Brew was allocated all of the debt related to the purchase of the farmland.

[¶ 21] The district court adequately explained its property distribution. The court's findings are supported by the evidence and we are not left with a definite and firm conviction a mistake has been

made. We conclude the district court's property distribution is equitable and is not clearly erroneous.

### III

[¶ 22] Shawn Brew argues the district court erred in calculating his child support obligation. He contends the court should not have calculated his income by averaging his self-employment income from the past five years because his self-employment activity has not been operated on a substantially similar scale for five years, the trucking business hauled water for fracking in the past, and his prior income is no longer sustainable with the downturn in the oil industry. He claims the court should have imputed his income because he is underemployed.

[¶ 23] Our standard for reviewing a district court's child support decision is well established:

Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law if it does not comply with the requirements of the child support guidelines. As a matter of law, the district court must clearly set forth how it arrived at the amount of income and level of support.

*Rathbun v. Rathbun*, 2017 ND 24, ¶ 5, 889 N.W.2d 855 (quoting *Bye v. Robinette*, 2015 ND 276, ¶ 4, 871 N.W.2d 432).

[¶ 24] Child support determinations are governed by the child support guidelines, N.D. Admin. Code ch. 75-02-04.1. *Raap v. Lenton*, 2016 ND 195, ¶ 5,

885 N.W.2d 777. The child support amount calculated under the guidelines enjoys a rebuttable presumption of correctness. *Id.* We have explained:

The district court has discretion to calculate an obligor's child support payments through the child support guidelines under N.D. Admin. Code ch. 75-02-04.1. *Langwald v. Langwald*, 2016 ND 81, ¶ 16, 878 N.W.2d 71. However, "[e]ach child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." N.D. Admin. Code § 75-02-04.1-02(10). "Without ordering the parties to present more information and making specific findings of fact, a [district] court cannot arbitrarily ignore the guidelines simply because it feels the obligor's tax returns do not adequately reflect the obligor's income." *Kobs v. Jacobson*, 2005 ND 222, ¶ 8, 707 N.W.2d 803 (citing *Knoll v. Kuleck*, 2004 ND 199, ¶ 5, 688 N.W.2d 370; N.D. Admin. Code § 75-02-04.1-05(3)).

*Raap*, at ¶ 7.

[¶ 25] Section 75-02-04.1-05, N.D. Admin. Code, governs how net income from self-employment is calculated for child support purposes. "Net income from self-employment means total income, for internal revenue service purposes, of the obligor . . . ." N.D. Admin. Code § 75-02-04.1-05(1). The child support guidelines anticipate an obligor's income from self-employment may fluctuate over time, and provide:

Self-employment activities may experience significant changes in production and income over time. To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale,

must be used to determine self-employment income. When self-employment activity has not been operated on a substantially similar scale for five years, a shorter period may be used.

N.D. Admin. Code § 75-02-04.1-05(4). The guidelines also authorize a court to use profit and loss statements if the obligor's tax returns are not available or do not reasonably reflect income from self-employment. N.D. Admin. Code § 75-02-04.1-05(3). We have said, "To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, *must be used* to determine self-employment income." *Raap*, 2016 ND 195, ¶ 9, 885 N.W.2d 777. "The district court must apply the guidelines to calculate an obligor's net income, even if the obligor is self-employed, the court has little evidence to consider, or an accurate depiction of income is difficult." *Entzie v. Entzie*, 2010 ND 194, ¶ 9, 789 N.W.2d 550.

[¶ 26] Here, the district court considered the parties' arguments about how child support should be calculated and concluded it was required to average Shawn Brew's income under N.D. Admin. Code § 75-02-04.1-05 because he is self-employed. The court said the parties' tax returns for the previous five years were received into evidence, neither party offered profit and loss statements for the trucking business, and Shawn Brew suggested child support should be based upon minimum wage income but it would be inappropriate to disregard tax returns to calculate support based on imputed income. The court explained it was required to determine Shawn Brew's average income using the tax returns unless his self-employment activity had not been operated on a substantially similar scale for five years. The court found:

> While the Court might be able to conclude that [the trucking business] is not currently operated on a substantially similar scale as it was in any one particular year, the Court is not prepared to conclude that, on balance, it is not being operated on a substantially similar scale as demonstrated by an average of those years. Furthermore, the Court is concerned that Shawn's spending belies his protestations that the business is not profitable and supports Jennifer's argument that he is impoverishing himself to affect the Court's rulings on child and/or spousal support.

The court said it was not persuaded to deviate from N.D. Admin. Code § 75-02-04.1-05(4), and even if it were to deviate, the determination of child support would be based upon profit and loss statements and no profit and loss statements were offered. The court averaged Shawn Brew's income from the trucking business over a five-year period using tax returns from 2011-2015, included other sources of income, and determined his annual net income for child support purposes is $139,846. The court ordered Shawn Brew to pay $2,998 per month in child support for two children or $1,949 per month for one child.

[¶ 27] The district court calculated Shawn Brew's net income from self-employment by averaging his income from the trucking business for the past five years using the parties' tax returns for 2011 to 2015. The court said it could not conclude the trucking business was not being operated on a substantially similar scale when it considered the business over the past five years and did not consider only the most recent years. The parties' tax returns support the court's findings.

The tax returns show Shawn Brew's self-employment income from the trucking business for the previous five years was: $173,833 in 2011; $266,060 in 2012; $259,184 in 2013; $160,697 in 2014; and $7,742 in 2015. The tax returns show there was some fluctuation in Shawn Brew's income from the trucking business over the last five years. But the court also found Shawn Brew's spending belies his claim that the trucking business was not profitable and supports Jennifer Brew's claim that he was impoverishing himself to affect the court's rulings on child support. The court found "while Shawn asserts that the trucking company is not currently operating in the black, he testified that there are $15,000 in accounts receivable, that he deposited $4,000 into the trucking account on the day of trial, that he is only running one of the two trucks (even though he testified he has sufficient work to run both), and that he testified that if he had not been 'scammed' by the dating site, the trucking operation might be showing a profit." Shawn Brew testified that he had enough business to run two drivers full time, but he did not have a driver for the second truck. He also testified he was planning to travel all over the United States starting in the fall to keep the operation busy. The evidence supports the court's finding that the business was operated on a substantially similar scale over the last five years.

[¶ 28] The guidelines allow the court to consider profit and loss statements if the tax returns do not reasonably reflect income from self-employment. N.D. Admin. Code § 75-02-04.1-05(3). The district court explained it could not deviate from the average calculated from the parties' tax returns because profit and loss statements were not offered into evidence. Shawn Brew did not offer any profit and loss statements, which may more accurately reflect the current status, except one for January to June 2016. We have said, "The guidelines must be applied using common sense and in consideration of the circumstances." *Rathbun*, 2017 ND 24, ¶ 9, 889 N.W.2d 855. We have also noted the oil industry has changed dramatically in recent years affecting job opportunities and the incomes of obligors working in the industry. *Id.* However, the court could not consider other ways to calculate Shawn Brew's income without evidence from the parties.

[¶ 29] Shawn Brew claims he is underemployed and N.D. Admin. Code § 75-02-04.1-07(3)(a) should be used to impute his income and calculate his obligation. An obligor is "underemployed" if "the obligor's gross income from earnings is significantly less than this state's statewide average earnings for persons with similar work history and occupational qualifications." N.D. Admin. Code § 75-02-04.1-07(1)(b). An obligor is presumed underemployed if his gross income is less than six-tenths of the statewide average earnings for persons with similar work history or occupational qualifications or is equal to 167 times the federal hourly minimum wage. N.D. Admin. Code § 75-02-04.1-07(2). A self-employed obligor may be underemployed as long as the obligor's income meets the requirements of the underemployment provisions of the child support guidelines. *Entzie*, 2010 ND 194, ¶ 16, 789 N.W.2d 550. Shawn Brew claimed he was underemployed and his income should be imputed to calculate his child support obligation, but he failed to present any evidence that he meets the requirements of the underemployment provisions. The court did not err by failing to impute Shawn Brew's income.

[¶ 30] The district court properly applied the child support guidelines to calculate Shawn Brew's child support obligation. We affirm the district court's child support decision.

IV

[¶ 31] Shawn Brew argues the district court erred in ordering him to pay Jennifer Brew $5,000 in attorney's fees. He claims he cannot afford to pay attorney's fees and they were awarded only because he conceded residential responsibility of the children.

[¶ 32] The district court has broad discretion to award attorney's fees in divorce proceedings under N.D.C.C. § 14-05-23. *Lewis v. Smart*, 2017 ND 214, ¶ 32, 900 N.W.2d 812. We have said the primary standard for awarding attorney's fees under N.D.C.C. § 14-05-23 is consideration of one spouse's needs and the other spouse's ability to pay. *Lewis*, at ¶ 32. However, we have also recognized attorney's fees may be appropriate "where a party's actions have unreasonably increased the time spent on a case[.]" *Id.* We have explained:

A district court also has inherent authority to sanction a litigant for misconduct. Sanctions must be reasonably proportionate to the misconduct. When sanctioning a party for misconduct, a district court should consider and make findings on the culpability or state of mind of the party against whom sanctions are being imposed, the prejudice to the moving party, the impact of the prejudice on the moving party's ability to present or defend the party's case, and the availability of less severe sanctions.

A district court has discretion in awarding attorney fees as a sanction in divorce actions. An award of attorney fees as a sanction will not be disturbed on appeal unless the court abuses its discretion. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.

*Id.* (quoting *Kelly v. Kelly*, 2011 ND 167, ¶¶ 35-36, 806 N.W.2d 133).

[¶ 33] Jennifer Brew requested the court award her $21,000 in attorney's fees because Shawn Brew engaged in obstructive and unwarranted litigation tactics throughout the course of the proceedings. The court awarded her $5,000 in attorney's fees, explaining:

Without discussing each aspect of the proceedings, it is the Court's sense that Shawn has, in fact, been unnecessarily obstructive and/or combative. As an illustrative example, having never earlier indicated an intention to seek primary residential responsibility, Shawn's counsel indicated he was seeking residential responsibility for the first time at the pretrial conference. Then, at the start of trial, abruptly conceded that Jennifer should be awarded residential responsibility. The Court concluded that the sole purpose for that tactic was to be difficult notwithstanding, or perhaps because, such would cause Jennifer to have to expend significant trial preparation time to make trial presentation adjustments to deal with what seems to have been a stunt.

For that reason, the Court believes that it is appropriate to order, and the Court does order, that Shawn be required to pay a portion of Jennifer's attorney fees.

[¶ 34] The court awarded attorney's fees as a sanction for Shawn Brew's misconduct. The court previously ordered Shawn Brew to pay $500 in attorney's fees as a sanction for failing to timely provide discovery responses. The court found the sole purpose of Shawn Brew's decision to seek primary residential responsibility shortly before trial and then abandon his request was to be difficult and to cause Jennifer Brew to expend significant time to deal with his "stunt." Jennifer Brew requested $21,000 in attorney's fees, and the district court found an award of $5,000 was reasonable. Because the court ordered Shawn Brew to pay attorney's fees under its inherent authority to impose a sanction for misconduct, it was not required to consider need and ability to pay. *See Lewis*, 2017 ND 214, ¶ 33, 900 N.W.2d 812. We conclude the district court did not abuse its discretion in awarding attorney's fees.

V

[¶ 35] We affirm the judgment.

[¶ 36] Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Jon J. Jensen

Gerald W. VandeWalle, C.J.