2005 ND 222

Connie KOBS, f/k/a Connie Jacobson
and f/k/a Connie Chumley,
Plaintiff and Appellee

v.

David J. JACOBSON, Defendant
and Appellant.

No. 20050165.

Supreme Court of North Dakota.

Dec. 27, 2005.

Justin D. Hager (argued), Bismarck, N.D., for defendant and appellant.

Connie Kobs, Bismarck, N.D., plaintiff and appellee.

MARING, Justice.

[¶ 1] David J. Jacobson appeals from a third amended judgment denying his motion seeking to reduce his child support obligation. Jacobson argues the trial court erred in applying the child support guidelines and imputed to him the amount of income he earned in 1999 for the purpose of determining his current child support obligation. We reverse and remand, instructing the trial court to enter an amended judgment ordering Jacobson to pay $207 a month in child support, an amount that reflects Jacobson's child support obligation under the guidelines.

I

[¶ 2] Jacobson and Connie Kobs, formerly Connie Jacobson, were divorced on May 28, 1998. The parties had two children together. The trial court issued an amended judgment on September 12, 1998, and a second amended judgment on April 20, 2000. Jacobson filed a third motion to amend judgment on February 16, 2005. Among other claims, Jacobson sought a reduction of his child support obligation based on the status of his oldest child and a loss in income. In the third amended judgment, filed May 5, 2005, the trial court terminated Jacobson's child support obligation for the oldest child, but did not reduce the child support for his youngest child.

[¶ 3] Jacobson argued a recalculation was appropriate based on his reduced income. Under the second amended judgment Jacobson's child support was based on a monthly income in 1999 of $1,300. In his motion for a third amended judgment, Jacobson presented tax returns for the five-year period between 2000 and 2004 showing a total loss of $5,431. Based on this income, Jacobson asserted his child support obligation would be $14 a month. Jacobson requested that the trial court set his support obligation based on the minimum wage, arguing, erroneously, this would result in a $168 a month obligation. Kobs argued the income in Jacobson's tax returns was largely reduced by depreciation and, without depreciation, his income would be in excess of $20,000 per year.

[¶ 4] The trial court found that Jacobson had not carried his burden of proof

with respect to his actual monthly income. Stating it was satisfied Jacobson's 1999 income was representative of his true income today, the trial court ordered Jacobson's support obligation for one child remain at $298 a month.

[¶ 5] On appeal, Jacobson argues the trial court erred by incorrectly applying the child support guidelines for determining his income. He also argues the trial court erred when it imputed his 1999 income for purposes of determining his present-day child support obligation.

## II

[¶ 6] Jacobson argues the trial court erred as a matter of law by incorrectly applying the child support guidelines in determining his support obligation. We agree.

[¶ 7] On appeal, "this Court reviews a child support order applying a de novo standard of review for questions of law, a clearly erroneous standard of review for questions of fact, and an abuse of discretion standard of review for discretionary matters." *Ramsey County Soc. Serv. Bd. v. Kamara*, 2002 ND 192, ¶ 6, 653 N.W.2d 693. When a trial court fails to comply with the requirements of the child support guidelines, it errs as a matter of law. *Lauer v. Lauer*, 2000 ND 82, ¶ 3, 609 N.W.2d 450. A trial court also errs as a matter of law when it does not clearly set forth how it determined the obligor's income and resulting support obligation. *Id.*

[¶ 8] "There is a rebuttable presumption under N.D.C.C. § 14–09–09.7 that the amount of support designated in the child support guidelines is correct." *Ramsey County Soc. Serv. Bd. v. Kamara*, 2002 ND 192, ¶ 10, 653 N.W.2d 693. Our child support laws were drafted with the intention that the level of support an obligor provides would be periodically re-viewed and modified to ensure the obligor's child support obligations remain in conformity with the guidelines. *Lauer*, 2000 ND 82, ¶ 4, 609 N.W.2d 450; N.D.C.C. § 14–09–08.4. Under N.D.C.C. § 14–09–08.4, the trial court must modify an obligor's child support obligation to conform to the guidelines when a motion to modify support is made more than one year after the entry of the prior order. *Id.*

> [T]he moving party does not need to demonstrate a material change in circumstances in order to modify an existing award when modification is sought more than one year after the original award. The party seeking a modification need only demonstrate the current amount paid is not in accordance with the guidelines.

*Torgerson v. Torgerson*, 2003 ND 150, ¶ 7, 669 N.W.2d 98. Without ordering the parties to present more information and making specific findings of fact, a trial court cannot arbitrarily ignore the guidelines simply because it feels the obligor's tax returns do not adequately reflect the obligor's income. *See Knoll v. Kuleck*, 2004 ND 199, ¶ 5, 688 N.W.2d 370; N.D. Admin. Code § 75–02–04.1–05(3).

## III

[¶ 9] Jacobson is a self-employed rancher. Under the child support guidelines, the child support obligation for a self-employed individual is determined using the obligor's total income for internal revenue service purposes. N.D. Admin. Code § 75–02–04.1–05(1). For self-employment activities that experience significant fluctuations in income from year to year, such as ranching, an average of the income reported for the most recent five-year period must be used, provided the scale of the self-employment activity over that period was substantially similar. N.D. Admin. Code § 75–02–04.1–05(4). If

tax returns are not available or they do not reasonably reflect an obligor's income from self-employment, the court must use profit and loss statements that more accurately reflect the obligor's current income. N.D. Admin. Code § 75–02–04.1–05(3).

■ [¶ 10] Here, it appears the trial court initially used the average of Jacobson's tax returns over the past five years in making its determination of his support obligation. Those figures show an average annual loss of $5,431. The trial court then, however, stated it believed Jacobson's average monthly income was $1,200, his level of income in 1999. The trial court alludes to Kobs' argument that depreciation deductions taken on Jacobson's tax returns should be added when calculating his income, but never clearly states why the data from Jacobson's five most recent tax returns should be ignored and his 1999 income imputed. The trial court explains only:

Connie makes the argument that a lot of what went into these income tax returns was depreciation which represents an offset against income but which does not require real dollars to be spent to be claimed. Connie argues David's income without depreciation would be in excess of $20,000 per year. David argues that the Court can set his child support based on the minimum wage which results in child support for one child of $168 per month.

The burden of proof is on the moving party, and David has not carried it with respect to his actual monthly income. The Court is satisfied that his income for 1999 when he was working as a rancher in essentially the same capacity he is working for himself now is representative of what his true income is even though there have been tough years for the cattle business lately. The Court finds his income continues to be $1,200

per month, which results in child support for one child of $298 per month.

The trial court has not clearly set forth its reasoning as required under our prior cases. *See Lauer,* 2000 ND 82, ¶ 3, 609 N.W.2d 450.

■ [¶ 11] If the trial court included deductions based on depreciation in Jacobson's income, the trial court acted under an erroneous interpretation of the law. This Court's decision in *Torgerson* makes clear that depreciation deductions may not be added back in when determining an obligor's net income under the guidelines. 2003 ND 150, 669 N.W.2d 98. In *Torgerson,* we stated:

[R]ecent changes [made in 1999] in the guidelines were designed to more closely track with Internal Revenue Service standards, using an obligor's total income from tax returns to determine child support without adding depreciation back into an obligor's net income. . . .

The child support guideline specifies, "[e]xamples of gross income include salaries . . . and net income from self-employment." N.D. Admin. Code § 75–02–04.1–01(5)(b) (1999). The guidelines further define income from self-employment as, "[n]et income from self-employment means total income, *for internal revenue service purposes,* of the obligor and the obligor's business." N.D. Admin. Code § 75–02–04.1–05(1) (1999) (emphasis added). . . .

The revised child support guidelines specifically omitted provisions for adding depreciation back into an obligor's net income because they created confusion and were open to manipulation. Summ. of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code § 75–02–04.1 at 28 (1998).

. . .

The 1999 changes in the support guideline unambiguously changed the practice of requiring depreciation to be added back into an obligor's income. Comments to the changes point out the policies behind the changes, citing efforts to follow Internal Revenue Service practices. Summ. of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code § 75–02–04.1 at 28 (1998). [Interpreting the guidelines as allowing depreciation to be added back into the obligor's net income] is an absurd reading and directly contrary to the guideline definition of net income from self-employment which provides, "[n]et income from self-employment means total income, for internal revenue service purposes, of the obligor and the obligor's business." N.D. Admin. Code § 75–02–04.1–05(1) (1999). 2003 ND 150, ¶¶ 14–18, 669 N.W.2d 98. Although N.D. Admin. Code § 75–02–04.1–05 was amended again in 2003, those changes do not affect our holding in *Torgerson.* A trial court cannot include depreciation deductions in income when determining an obligor's child support obligation.

[¶ 12] The trial court's reasoning, that Jacobson's "income for 1999 when he was working as a rancher in essentially the same capacity he is working for himself now" could perhaps be considered a determination that Jacobson voluntarily changed employment, resulting in a reduction of income. However, N.D. Admin. Code § 75–02–04.1–07(9), which governs such a situation, does not apply under these facts.

[I]f an obligor makes a voluntary change in employment resulting in reduction of income, monthly gross income equal to one hundred percent of the obligor's greatest average monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided, less actual monthly gross earnings, may be imputed without a showing that the obligor is unemployed or underemployed.

N.D. Admin. Code § 75–02–04.1–07(9). In this case, the voluntary change in employment would have occurred in 1999. Jacobson moved to amend the second amended judgment on February 16, 2005. Even if income could be imputed due to a voluntary change of employment, Jacobson's tax returns for the three years prior show losses in 2004 of $32,482, in 2003 of $28,033, and in 2002 of $18,387. Although Jacobson's returns show a profit of $73,760 in 2001, this, perhaps conveniently, is more than 36 months before the third motion to amend judgment and two years after the change of employment in 1999. Section 75–02–04.1–07(9), N.D. Admin. Code, cannot be a basis for the trial court's decision.

[¶ 13] Taking the average of Jacobson's tax returns for the previous five years produces an annual loss of $5,431 a year. An obligor is presumed underemployed if, per month, he makes less than one-hundred and sixty-seven times the federal hourly minimum wage. N.D. Admin. Code § 75–02–04.1–07(2)(b). In this case, Jacobson makes far less than the amount specified in N.D. Admin. Code § 75–02–04.1–07(2)(b), and therefore is presumed to be underemployed.

[¶ 14] Relying on *Torgerson* and *Lauer,* Jacobson argues that a trial court cannot find a self-employed person to be underemployed for purposes of imputing income under the child support guidelines unless adequate evidence of the obligor's gross income from earnings and of the prevailing amounts earned in the community of similarly-situated persons is presented. *See Torgerson,* 2003 ND 150, ¶ 10,

669 N.W.2d 98; *Lauer*, 2000 ND 82, ¶ 7, 609 N.W.2d 450. Jacobson misreads those cases and our child support guidelines. Section 75–02–04.1–07(2), N.D. Admin. Code, sets one hundred sixty-seven times the federal hourly minimum wage per month as a baseline level of income for a presumption that an obligor is underemployed. The presumption will arise for any obligor making less than that amount. N.D. Admin. Code § 75–02–04.1–07(2)(b). However, section 75–02–04.1–07(2)(a), N.D. Admin. Code, creates a higher level of income at which the presumption may also arise. Under that section, if an obligor's income is less than six-tenths of the prevailing amount earned in the community by one with similar qualifications and similarly employed, the obligor is presumed to be underemployed. N.D. Admin. Code § 75–02–04.1–07(2)(a). An obligor who successfully proved he earned more than six-tenths of the prevailing amount earned in the community by one with similar qualifications and similarly employed would still be presumed underemployed if he made less than the amount specified in N.D. Admin. Code § 75–02–04.1–07(2)(b).

[¶ 15] The current federal minimum wage is $5.15 an hour. The current federal minimum wage went into effect on September 1, 1997. Thus, under N.D. Admin. Code § 75–02–04.1–07(2)(b), any obligor, self-employed or otherwise, would be presumed underemployed if he made less than $860.05 a month. In *Torgerson*, decided in 2003, the obligor made approximately $10,841 a year or $903.42 a month; just above the N.D. Admin. Code § 75–02–04.1–07(2)(b) threshold. 2003 ND 150, ¶ 4, 669 N.W.2d 98. In *Lauer*, decided in 2000, the obligor earned $27,484.50 a year; well above the amount specified under N.D. Admin. Code § 75–02–04.1–07(2)(b). 2002 ND 82, ¶ 8, 643 N.W.2d 713. 609 N.W.2d 450. In *Torgerson* and *Lauer*, unlike here, the presumption raised by N.D. Admin. Code § 75–02–04.1–07(2)(b) never arose. Jacobson is underemployed under the plain meaning of the code.

[¶ 16] An underemployed obligor, with exceptions not applicable here, has income imputed to him for purposes of making a child support determination under the guidelines.

> [G]ross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.
>
> a. A monthly amount equal to one hundred sixty-seven times the hourly federal minimum wage.
>
> b. An amount equal to six-tenths of prevailing gross earnings in the community of persons with similar work history and occupational qualifications.
>
> c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided.

N.D. Admin. Code § 75–02–04.1–07(3). Here, the amount the trial court should have used to make its child support determination was one-hundred and sixty-seven times the federal hourly minimum wage per month, or $860.05 a month. Jacobson's income for the thirty-six months before commencement of the proceeding shows losses. The only evidence Kobs presented at the hearing regarding the earnings of persons in the community with similar work history and occupational qualifications was evidence of the earnings of a carpenter, an occupation Jacobson last worked in the early 1980s. Therefore, Ja-

cobson's income must be imputed under N.D. Admin. Code § 75–02–04.1–07(3)(a).

[¶ 17] Jacobson argues that, by imputing one-hundred and sixty-seven times the federal hourly minimum wage per month, his monthly child support obligation should be $168. He is incorrect. "In applying the child support guidelines, an obligor's monthly net income amount ending in fifty dollars or more must be rounded up to the nearest one hundred dollars, and must otherwise be rounded down to the nearest one hundred dollars." N.D. Admin. Code § 75–02–04.1–02(5). Rounding Jacobson's imputed income up to $900, the correct level of support in this case, for one child, is $207. See N.D. Admin. Code § 75–02–04.1–10.

[¶ 18] The effective date for this decreased level of support should be the date of service of Jacobson's motion to decrease support, February 17, 2005. See Wigginton v. Wigginton, 2005 ND 31, ¶ 16, 692 N.W.2d 108 (noting "the amount of child support is set from the date of the motion to modify, absent a good reason for not doing so").

### III

[¶ 19] We reverse the trial court's decision and remand instructing the trial court to enter an amended judgment setting Jacobson's child support obligation at $207 a month.

[¶ 20]GERALD W. VANDE WALLE, C.J., DONOVAN J. FOUGHTY, D.J., DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ, concur.

[¶ 21] The Honorable DONOVAN JOHN FOUGHTY, D.J., sitting in place of KAPSNER, J., disqualified.