McEvers, Justice.
 

 [¶ 1] Alexander Ferguson appeals from a fourth amended judgment increasing his child support obligation. We conclude the district court retained jurisdiction to modify his child support obligation under the Uniform Interstate Family Support Act ("UIFSA"), as enacted in N.D.C.C. ch. 14-12.2. We further conclude the court did not err in determining his child support obligation. We affirm.
 

 I
 

 [¶ 2] At times relevant to these proceeding, Alexander Ferguson and Samantha Wallace-Ferguson, now known as Samantha Oliver, were active members in the United States military. The parties divorced while they both were stationed in Germany in 2011. In their German divorce decree Wallace-Ferguson received primary custody of their minor child, born in 2009. In 2012, after Ferguson had been stationed at the Grand Forks Air Force Base, the parties' divorce decree was registered in the district court in Grand Forks. Wallace-Ferguson was also later stationed in Turkey.
 

 [¶ 3] In 2012 and 2013, the district court in North Dakota entered amended judgments, addressing issues of parenting rights and responsibilities and child support. Wallace-Ferguson was subsequently stationed in Texas. In July 2016, Ferguson was reassigned to a military base in South Korea (Republic of Korea). On November 17, 2016, Wallace-Ferguson moved the court to amend the judgment to address transporting the child for parenting time. On December 29, 2016, she filed another motion in the North Dakota court seeking to modify Ferguson's child support obligation. In response Ferguson requested the court to transfer jurisdiction to Texas for Wallace-Ferguson's pending motion to modify child support. Ferguson contended the court no longer had jurisdiction because he had moved out of the state and neither Wallace-Ferguson nor their child lived in North Dakota.
 

 [¶ 4] After a January 30, 2017 hearing, the district court entered a third amended judgment modifying language regarding transporting the child for parenting time. In February 2017, the court also entered an order retaining jurisdiction over the matter. Ferguson moved the court to reconsider
 
 *327
 
 its decision, again asserting a lack of jurisdiction, which the court denied. On April 13, 2017, the court held a hearing on Wallace-Ferguson's motion to review child support. Both Ferguson and Wallace-Ferguson testified telephonically at the hearing and presented evidence. The court subsequently entered a fourth amended judgment increasing Ferguson's child support obligation.
 

 II
 

 [¶ 5] Ferguson argues the district court erred in exercising continuing, exclusive jurisdiction in this case since he has moved from North Dakota and neither Wallace-Ferguson nor the minor child reside in the state. He contends the court lacked subject matter jurisdiction under N.D.C.C. § 14-12.2-08 [ UIFSA § 205 (2008) ] to modify his child support obligation.
 

 [¶ 6] UIFSA is a uniform law first approved by the National Conference of Commissioners on Uniform State Laws in 1992, and revised in 1996, 2001, and 2008.
 
 See
 

 Smith v. Baumgartner
 
 ,
 
 2003 ND 120
 
 , ¶ 15,
 
 665 N.W.2d 12
 
 ; 9 U.L.A. (pt. 1B) 150-57 (2017 Cum. Supp.). UIFSA governs, among other things, the procedures for establishing, enforcing, and modifying child support orders when more than one state is involved.
 
 Smith
 
 , at ¶ 15. In 1995, North Dakota enacted UIFSA, codified at N.D.C.C. ch. 14-12.2, to replace the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA").
 
 See
 

 Smith
 
 , at ¶ 16 ;
 
 Henderson v. Henderson
 
 ,
 
 1999 ND 156
 
 , ¶ 8 n.1,
 
 598 N.W.2d 490
 
 ;
 
 see also
 
 1995 N.D. Sess. Laws ch. 157; 1997 N.D. Sess. Laws ch. 152; 2009 N.D. Sess. Laws ch. 152. "Under UIFSA, the possibility of multiple child support orders has been replaced by the concept of a single controlling order under the court's continuing exclusive jurisdiction."
 
 Henderson
 
 , at ¶ 8 n.1 ;
 
 see
 
 N.D.C.C. §§ 14-12.2-07 through 14-12.2-10. All fifty states have enacted some form of UIFSA.
 
 Smith
 
 , at ¶ 15 ;
 
 see
 
 Annot.,
 
 Construction and Application of Uniform Interstate Family Support Act
 
 ,
 
 90 A.L.R.5th 1
 
 (2001).
 

 [¶ 7] To address Ferguson's jurisdictional argument, we construe the 2008 version of UIFSA, which North Dakota adopted in 2009, but became effective July 1, 2015.
 
 See
 
 2009 N.D. Sess. Laws ch. 152, § 73 ("This Act becomes effective on the date the department of human services certifies to the legislative council that the Hague convention on the international recovery of child support and other forms of family maintenance is ratified and that the United States deposited its instrument of ratification."); 2015 N.D. Sess. Laws ch. 126, § 13 (amending section 73 to state: "This Act becomes effective on July 1, 2015."). Our standard for construing statutes is well established:
 

 Statutory interpretation is a question of law, which is fully reviewable on appeal.
 
 Nelson v. Johnson
 
 ,
 
 2010 ND 23
 
 , ¶ 12,
 
 778 N.W.2d 773
 
 . The primary purpose of statutory interpretation is to determine the intention of the legislation.
 
 In re Estate of Elken
 
 ,
 
 2007 ND 107
 
 , ¶ 7,
 
 735 N.W.2d 842
 
 . Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. If the language of the statute is ambiguous, however, a court may resort to extrinsic aids to interpret the statute. N.D.C.C. § 1-02-39.
 

 Zajac v. Traill Cty. Water Res. Dist.
 
 ,
 
 2016 ND 134
 
 , ¶ 6,
 
 881 N.W.2d 666
 
 .
 

 [¶ 8] Statutes are to be construed as a whole and harmonized to give meaning
 
 *328
 
 to related provisions. N.D.C.C. § 1-02-07. "We interpret uniform laws in a uniform manner, and we may seek guidance from decisions in other states which have interpreted similar provisions in a uniform law."
 
 Matter of Bradley K. Brakke Trust
 
 ,
 
 2017 ND 34
 
 , ¶ 12,
 
 890 N.W.2d 549
 
 (quoting
 
 In re Estate of Allmaras
 
 ,
 
 2007 ND 130
 
 , ¶ 13,
 
 737 N.W.2d 612
 
 );
 
 see also
 
 N.D.C.C. § 1-02-13 (uniform laws construed to effectuate general purpose to make uniform the laws of enacting states). "When we interpret and apply provisions in a uniform law, we may look to official editorial board comments for guidance."
 
 Brakke Trust
 
 , at ¶ 12 (citing
 
 In re Estate of Gleeson
 
 ,
 
 2002 ND 211
 
 , ¶ 7,
 
 655 N.W.2d 69
 
 ).
 

 [¶ 9] Section 14-12.2-08, N.D.C.C. [ UIFSA § 205 (2008) ], provides for a district court's continuing, exclusive jurisdiction to modify a child support order, stating in relevant part:
 

 1. A tribunal of this state that has
 
 issued a child support order consistent with the law of this state
 
 has and shall exercise continuing, exclusive jurisdiction to modify its child support order if the order is the controlling order and:
 

 a.
 
 At the time of the filing
 
 of a request for modification this state
 
 is the residence
 
 of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
 

 b. Even if this state is not the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued, the parties consent in a record or in open court that the tribunal of this state may continue to exercise jurisdiction to modify its order.
 

 2. A tribunal of this state that has issued a child support order consistent with the law of this state may not exercise continuing, exclusive jurisdiction to modify the order if:
 

 a. All of the parties who are individuals file consent in a record with the tribunal of this state that a tribunal of another state that has jurisdiction over at least one of the parties who is an individual or that is located in the state of residence of the child may modify the order and assume continuing, exclusive jurisdiction; or
 

 b. Its order is not the controlling order.
 

 (Emphasis added.)
 

 [¶ 10] The comment to UIFSA § 205 (2008), while not an annotation to the law, explains that this "crucial provision" provides an issuing court with continuing, exclusive jurisdiction ("CEJ") and is "fundamental to the principle of one-child-support-order-at-a-time":
 

 As long as one of the individual parties or the child continues to reside in the issuing state, and as long as the parties do not agree to the contrary, the issuing tribunal has
 
 continuing, exclusive jurisdiction
 
 over its child-support order-which in practical terms means that it may modify its order. The statute takes an even-handed approach. The identity of the party remaining in the issuing state-obligor or obligee-does not matter. Indeed, if the individual parties have left the issuing state but the child remains behind, CEJ remains with the issuing tribunal. Even if the parties and the child no longer reside in the issuing state, the support order continues in existence and is fully enforceable unless and until a modification takes place in accordance with the requirements of Article 6,
 
 infra
 
 . Note, however, that the CEJ of the issuing tribunal over a spousal-support order is permanent,
 
 see
 
 Section 211,
 
 infra
 
 .
 

 *329
 
 Subsection (a)(1) [
 
 see
 
 N.D.C.C. § 14-12.2-08(1)(a) ] states the basic rule, and subsection (a)(2) [
 
 see
 
 N.D.C.C. § 14-12.2-08(1)(b) ] states an exception to that rule. First, the time to measure whether the issuing tribunal has continuing, exclusive jurisdiction to modify its order, or whether the parties and the child have left the state, is explicitly stated to be
 
 at the time of filing
 
 a proceeding to modify the child-support order. Second, the term in subsection (a)(1) "is the residence" makes clear that any interruption of residence of a party between the date of the issuance of the order and the date of filing the request for modification does not affect jurisdiction to modify. Thus, if there is but one order, it is the controlling order in effect and enforceable throughout the United States, notwithstanding the fact that everyone at one time had left the issuing state. If the order is not modified during this time of mutual absence, a return to reside in the issuing state by a party or child immediately identifies the proper forum at the time of filing a proceeding for modification. Although the statute does not speak explicitly to the issue, temporary absence should be treated in a similar fashion.
 
 Temporary employment in another state may not forfeit a claim of residence in the issuing state. Of course, residence is a fact question for the trial court, keeping in mind that the question is residence, not domicile
 
 .
 

 ....
 

 The other side of the coin follows logically. Just as subsection (a) [
 
 see
 
 N.D.C.C. § 14-12.2-08(1) ] defines the retention of continuing, exclusive jurisdiction,
 
 by clear implication the subsection also identifies how jurisdiction to modify may be lost
 
 . That is, if all the relevant persons-the obligor, the individual obligee, and the child-have permanently left the issuing state, absent an agreement the issuing tribunal no longer has an appropriate nexus with the parties or child to justify the exercise of jurisdiction to modify its child-support order. Further, the issuing tribunal will have no current evidence readily available to it about the factual circumstances of anyone involved, and the taxpayers of that state will have no reason to expend public funds on the process. Note, however, that
 
 the original order of the issuing tribunal remains valid and enforceable
 
 . That order is in effect not only in the issuing state, but also in those states in which the order has been registered. The order also may be registered and enforced in additional states even after the issuing tribunal has lost its power to modify its order,
 
 see
 
 Sections 601-604,
 
 infra
 
 [
 
 see
 
 N.D.C.C. §§ 14-12.2-35 to 14-12.2-38 ]. In sum, the original order remains in effect until it is properly modified in accordance with the narrow terms of Sections 609-612,
 
 infra
 
 [
 
 see
 
 N.D.C.C. §§ 14-12.2-43 to 14-12.2-46 ].
 

 UIFSA § 205 cmt. (2008), 9 U.L.A. (pt. 1B) 187-88 (2017 Cum. Supp.) (emphasis added). "[T]he central jurisdictional feature of UIFSA is the concept of continuing, exclusive jurisdiction[, and] a court that makes a valid child support order retains exclusive jurisdiction to modify the order as long as the requirements for continuing, exclusive jurisdiction remain fulfilled."
 
 In re Marriage of Connolly
 
 ,
 
 20 Cal.App.5th 395
 
 ,
 
 228 Cal.Rptr.3d 890
 
 , 895 (2018) (citations and quotation marks omitted). "The court of another state may enforce a child support order registered in that state, but may not modify it unless the decree state has lost its continuing, exclusive jurisdiction."
 

 Id.
 

 [¶ 11] Ferguson contends there is no dispute the parties and the child do not reside in North Dakota and, therefore, the
 
 *330
 
 district court had lost continuing, exclusive jurisdiction to modify the child support obligation "under any legal analysis of the factual situation." He contends the court erred in concluding it had jurisdiction to modify child support and the amended judgment is void because it was entered without subject matter jurisdiction.
 
 See
 

 Harshberger v. Harshberger
 
 ,
 
 2006 ND 245
 
 , ¶ 27,
 
 724 N.W.2d 148
 
 ("A judgment entered without subject matter jurisdiction is void.").
 

 [¶ 12] Indeed, a majority of courts have held that once the obligor, the obligee, and the minor children subject to a support order no longer reside in the state, the issuing court loses continuing, exclusive jurisdiction to
 
 modify
 
 that order:
 

 Virtually every jurisdiction that has addressed this issue has concluded that the issuing tribunal loses subject matter jurisdiction when all of the parties to the child support action have moved outside the state
 
 .
 
 See
 

 Knowlton v. Knowlton
 
 ,
 
 2005 OK CIV APP 22
 
 ,
 
 110 P.3d 578
 
 , 579 (Okla. Civ. App. 2005) ;
 
 In re Marriage of Metz
 
 ,
 
 31 Kan. App.2d 623
 
 ,
 
 69 P.3d 1128
 
 , 1132 (Kan. Ct. App. 2003) (Kansas court no longer had continuing, exclusive jurisdiction to modify the child support order when mother, father, and children had moved from Kansas);
 
 Cohen v. Powers
 
 ,
 
 180 Or. App. 409
 
 ,
 
 43 P.3d 1150
 
 , 1152 (Or. Ct. App. 2002) (Alabama court no longer had continuing, exclusive jurisdiction over support order under [the] UIFSA because neither party resided in Alabama);
 
 Jurado v. Brashear
 
 ,
 
 782 So.2d 575
 
 , 580-81 (La. 2001) (Louisiana court lost continuing, exclusive jurisdiction to modify child support after the parties and children left the state);
 
 Etter v. Etter
 
 ,
 
 2001 OK CIV APP 18
 
 ,
 
 18 P.3d 1088
 
 , 1090 (Okla. Civ. App. 2001) (trial court did not have jurisdiction under [the] UIFSA to modify child support after both parties had moved out of state);
 
 LeTellier v. LeTellier
 
 ,
 
 40 S.W.3d 490
 
 , 493-94 (Tenn. 2001) ( [the] UIFSA does not confer subject matter jurisdiction upon the Tennessee court to hear mother's petition to modify the District of Columbia's support order);
 
 In re B.O.G.
 
 ,
 
 48 S.W.3d 312
 
 , 318 (Tex. App. 2001) (Texas court no longer had jurisdiction to modify the support order under [the] UIFSA because the parties no longer resided in Texas).
 

 Collins v. Dep't of Health & Family Servs. ex rel. Paczek
 
 ,
 
 394 Ill.Dec. 522
 
 ,
 
 36 N.E.3d 813
 
 , 819 (Ill. App. Ct. 2014) (quoting
 
 In re Marriage of Haugh
 
 ,
 
 225 Cal.App.4th 963
 
 ,
 
 170 Cal.Rptr.3d 683
 
 , 690 (2014) ) (quotation marks omitted).
 
 See also
 

 Nordstrom v. Nordstrom
 
 ,
 
 50 Va.App. 257
 
 ,
 
 649 S.E.2d 200
 
 , 204-05 (2007).
 

 [¶ 13] This case, however, involves a unique additional circumstance that, at the time of her motion, Wallace-Ferguson and the child were residing in another state, and even if Ferguson was no longer residing in Grand Forks, arguably he was residing outside of the United States. Neither party has cited or discussed N.D.C.C. § 14-12.2-45(6) [
 
 see
 
 UIFSA § 611(f) (2008) ]. While N.D.C.C. § 14-12.2-45, provides certain restrictions for modifying a child support order of another state, N.D.C.C. § 14-12.2-45(6) contains a narrow exception for an issuing court of this state to modify its support order:
 

 6. Without regard to the restrictions on modification of a child support order stated in subsection 2 of section 14-12.2-04 and this section, a tribunal of this state retains jurisdiction to modify an order issued by a tribunal of this state if:
 

 a. One party resides in another state; and
 

 b. The other party resides outside the United States.
 

 *331
 
 In other words, notwithstanding the personal jurisdiction limitations under N.D.C.C. § 14-12.2-04(2), and the restrictions of N.D.C.C. § 14-12.2-45(1) through (5), a North Dakota court retains jurisdiction to modify an order issued by a North Dakota court when one party resides in another state and the other party resides outside the United States.
 

 [¶ 14] The comment to UIFSA § 611 (2008) explains the rationale for subsection (f), which was added in the 2008 version:
 

 Subsection (f) [
 
 see
 
 N.D.C.C. § 14-12.2-45(6) ] creates a necessary exception to the play-away concept
 
 [1]
 
 when the parties and the child no longer reside in the issuing state and one party resides outside the United States. The play-away principle makes sense when the tribunals involved have identical laws regarding continuing, exclusive jurisdiction to modify a child-support order.
 
 See
 
 sections 205 through 207 [
 
 see
 
 N.D.C.C. §§ 14-12.2-08 through 14-12.2-10 ]. If one party resides in a foreign country, a pure play-away rule would deny modification in a forum subject to UIFSA rules to the party or child who has moved from the issuing state, but continues to reside in the United States. This result does not occur under Convention art.18, which places restrictions on modification of a support order in another Convention country if the obligee remains in the issuing Convention country. That article does not mention an effect when only the obligor remains in the issuing country, perhaps because the Convention makes clear that under a child-based system modification jurisdiction will follow the obligee and the child.
 

 Subsection (f) identifies the tribunal that issued the controlling order as the logical choice for an available forum in which UIFSA will apply. This exception to the play-away rule provides assured personal jurisdiction over the parties, which in turn enables the issuing tribunal to retain continuing jurisdiction to modify its order.
 
 Of course, the party residing outside the United States has the option to pursue a
 

 modification in the state where the other party or child currently reside
 
 .
 

 UIFSA § 611 cmt. (2008), 9 U.L.A. (pt. 1B) 240 (2017 Cum. Supp.) (emphasis added).
 
 See
 
 Margaret Campbell Haynes & Susan Friedman Paikin,
 
 "Reconciling" FFCCSOA and UIFSA
 
 ,
 
 49 Fam. L.Q. 331
 
 , 343 (2015) ("UIFSA 2008 allows a U.S. state to modify its order, even if it lacks continuing, exclusive jurisdiction, if one of the parties still lives in the United States and the other party lives in a foreign country.") (citing UIFSA § 611(f) ). Ferguson has not sought modification of his child support obligation.
 

 [¶ 15] On its face, N.D.C.C. § 14-12.2-45(6) resolves the jurisdictional issue raised in this case and provides the district court retained jurisdiction to modify its previous child support order, in that the court issued the prior order, one party resides in another state, and the other party arguably resides outside the United States. The parties on appeal nevertheless challenge where Ferguson "resides" for UIFSA purposes as an active-duty member of the military stationed in another country.
 

 [¶ 16] As one author has noted, "There are no statutory provisions in UIFSA that are unique if a servicemember is to pay, receive, or benefit from support. However, UIFSA is of particular interest
 
 *332
 
 to the military because of the mobility of military members and the virtual inevitability of inter-jurisdictional support enforcement and litigation." Joseph W. Booth,
 
 A Guide for Assisting Military Families with the Uniform Interstate Family Support Act (UIFSA)
 
 ,
 
 43 Fam. L.Q. 203
 
 , 205 (2009). "More than any single issue, the use of the various forms of the term
 
 residency
 
 uniquely plagues military cases."
 

 Id.
 

 "In a military context, case law supports the proposal that a servicemember does not necessarily leave his or her state of residency by being assigned duty elsewhere."
 

 Id.
 

 "The factors of domicile are very fact dependent and have to be reviewed on a case-by-case basis."
 

 Id.
 

 [¶ 17] We also acknowledge that courts have disagreed on whether the UIFSA term "reside" means state-law governing "domicile."
 

 There is a divergence in court decisions, but UIFSA tracks the residence, not domicile, of each obligee, obligor, and child. The following cases reflect the inconsistency in interpretation.
 
 State ex rel. SRS v. Ketzel
 
 , [
 
 47 Kan.App.2d 536
 
 ]
 
 275 P.3d 923
 
 (Kan. Ct. App. 2012) states that residence, and not domicile, was what the drafters of UIFSA intended, while
 
 In re Marriage of Amezquita & Archuleta
 
 , [
 
 101 Cal.App.4th 1415
 
 ]
 
 124 Cal.Rptr.2d 887
 
 (Ct. App. 2002) and
 
 Kean v. Marshall
 
 , [
 
 294 Ga.App. 459
 
 ]
 
 669 S.E.2d 463
 
 (Ga. 2008) hold that UIFSA's residency requirements really should be analyzed as domicile. UIFSA uses the term "residence" and that is exactly what was meant. The statesmanship, the academic acumen, and the experienced linguistic specificity of the Commission should not be cast aside as merely sloppy syntax; "residence" means just that. However, look to local law to determine how to define "residence."
 

 Joseph W. Booth,
 
 Feature, A Practical Guide to
 

 UIFSA
 
 , 39 Fam. Adv. 10, 14-15 (2017).
 

 [¶ 18] Here, the parties dispute whether Ferguson's military duty outside of the United States renders him permanently away from North Dakota or whether a difference exists if he has been "deployed" or "reassigned." The range of evidence at the hearings, however, established that Ferguson either resided outside of the United States-South Korea-at the time of Wallace-Ferguson's motion to modify child support or, alternatively, continued to reside in North Dakota. He also suggests on appeal that he recently changed his "permanent duty station" to Abu Dhabi, UAE, and would be stationed there for a year before coming back stateside.
 

 [¶ 19] The record in this case shows only that at the time Wallace-Ferguson filed her child support motion, Ferguson resided either outside of the United States or in North Dakota-both of which would allow the North Dakota court to modify its previously entered child support order under N.D.C.C. § 14-12.2-45(6) or N.D.C.C. § 14-12.2-08(1)(a), respectively. We therefore conclude the district court retained jurisdiction to modify its prior child support decision and the court did not err in ruling on her motion to increase his child support obligation.
 

 III
 

 [¶ 20] Ferguson argues the district court erred in calculating its child support award by imputing income to him for an amount based on an overseas housing allowance ("OHA"). He asserts no evidence shows he actually received an OHA while stationed in South Korea, OHA applies to off-base housing allowance, and Ferguson resided in the barracks on base.
 

 *333
 
 [¶ 21] Our standard for reviewing a district court's child support decision is well established:
 

 Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law if it does not comply with the requirements of the child support guidelines. As a matter of law, the district court must clearly set forth how it arrived at the amount of income and level of support.
 

 Brew v. Brew
 
 ,
 
 2017 ND 242
 
 , ¶ 23,
 
 903 N.W.2d 72
 
 (quoting
 
 Rathbun v. Rathbun
 
 ,
 
 2017 ND 24
 
 , ¶ 5,
 
 889 N.W.2d 855
 
 ).
 

 [¶ 22] The child support guidelines provided in N.D. Admin. Code ch. 75-02-04.1 govern child support decisions.
 
 Brew
 
 ,
 
 2017 ND 242
 
 , ¶ 24,
 
 903 N.W.2d 72
 
 ;
 
 Raap v. Lenton
 
 ,
 
 2016 ND 195
 
 , ¶ 5,
 
 885 N.W.2d 777
 
 . A child support amount calculated under the guidelines enjoys a rebuttable presumption of correctness.
 
 Brew
 
 , at ¶ 24 ;
 
 Raap
 
 , at ¶ 5. This Court has explained:
 

 The district court has discretion to calculate an obligor's child support payments through the child support guidelines under N.D. Admin. Code ch. 75-02-04.1.
 
 Langwald v. Langwald
 
 ,
 
 2016 ND 81
 
 , ¶ 16,
 
 878 N.W.2d 71
 
 . However, "[e]ach child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." N.D. Admin. Code § 75-02-04.1-02(10). "Without ordering the parties to present more information and making specific findings of fact, a [district] court cannot arbitrarily ignore the guidelines simply because it feels the obligor's tax returns do not adequately reflect the obligor's income."
 
 Kobs v. Jacobson
 
 ,
 
 2005 ND 222
 
 , ¶ 8,
 
 707 N.W.2d 803
 
 (citing
 
 Knoll v. Kuleck
 
 ,
 
 2004 ND 199
 
 , ¶ 5,
 
 688 N.W.2d 370
 
 ; N.D. Admin. Code § 75-02-04.1-05(3) ).
 

 Brew
 
 , at ¶ 24 (quoting
 
 Raap
 
 , at ¶ 7 ).
 

 [¶ 23] Section 75-02-04.1-01(4)(a), N.D. Admin. Code, defines "gross income" as "income from any source, in any form, but does not mean: ... (5) Overseas housing-related allowances paid to an obligor who is in the military to the extent those housing-related allowances exceed the housing allowance in effect at the Minot air force base." "Examples of gross income include ... value of in-kind income received on a regular basis, ... military subsistence payments." N.D. Admin. Code § 75-02-04.1-01(4)(b). " 'In-kind income' means the receipt from employment or income-producing activity of any valuable right, property or property interest, other than money or money's worth, including ... use of property, including
 
 living quarters at no charge or less than the customary charge
 
 , and the use of consumable property or services at no charge or less than the customary charge." N.D. Admin. Code § 75-02-04.1-01(5) (emphasis added).
 

 [¶ 24] Ferguson argues that the evidence shows that he resided in on-base housing in "a paltry South Korean barracks room" and that he did not receive any allowance in his monthly pay stub or his leave and earning statement. He contends the court did not have authority to include an imputed OHA to calculate his child support obligation. Wallace-Ferguson responds that the court did not err in imputing in-kind income for his "free" military housing in South Korea. She asserts that while he did not present evidence establishing what a fair value for the housing would be, she submitted evidence supporting a value for an in-kind income for his housing.
 

 *334
 
 [¶ 25] Here, although the fourth amended judgment states Ferguson is paid an overseas housing allowance, he did not apparently receive an actual overseas housing allowance for South Korea. The district court nonetheless imputed as income the overseas allowance as the value of his base housing, reasoning that it did not exceed the housing allowance amount for the Minot Air Force Base. The guidelines clearly contemplate that an obligor's gross income would include an amount for housing, either in-kind or an actual allowance, if provided by an employer. On this record, we conclude the court did not err in imputing to him an amount for in-kind income of his military housing in South Korea under N.D. Admin. Code § 75-02-04.1-01(5).
 

 IV
 

 [¶ 26] Wallace-Ferguson's request for attorney fees under N.D.R.App.P. 38 is denied. The fourth amended judgment is affirmed.
 

 [¶ 27] Lisa Fair McEvers
 

 Jon J. Jensen
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.
 

 [1]
 

 "A colloquial (but easily understood) description is that the nonresident movant for modification must 'play an away game on the other party's home field.' " UIFSA § 611 cmt. (2008), 9 U.L.A. (pt. 1B) 238 (2017 Cum. Supp.).