FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
FEBRUARY 22, 2024
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 30

| | |
|---|---|
| Alexander Tyson Williams, | Plaintiff and Appellant |
| v. | |
| Stefaney Vraa, | Defendant and Appellee |
| and | |
| Kyle Harley Lempia, | Defendant |

## No. 20230248

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Todd L. Cresap, Judge.

REVERSED AND REMANDED.

Opinion of the Court by McEvers, Justice.

Aften M. Grant, Minot, ND, for plaintiff and appellant.

Megan M. Hogue, Minot, ND, for defendant and appellee.

**McEvers, Justice.**

[¶1] Alexander Williams appeals from an order dismissing his petition for nonparent visitation. On appeal, Williams argues the district court erred in dismissing his petition for failure to plead a prima facie case. We reverse and remand for further proceedings, concluding Williams established a prima facie case for nonparent visitation and was entitled to an evidentiary hearing.

I

[¶2] Stefaney Vraa, now known as Stefaney Parker, and Kyle Lempia are the biological parents of I.H.L., born in 2012. In 2014, Vraa began dating Williams and later moved with I.H.L. from Bemidji, Minnesota, to Minot, North Dakota, to live with Williams. Williams and Vraa married in November 2014 and had one child, B.N.W., in 2015. Vraa was awarded primary residential responsibility of I.H.L. in 2015. Throughout their marriage I.H.L. lived with Williams and Vraa, subject to Lempia's parenting time.

[¶3] The parties divorced in February 2018 and shared equal residential responsibility of their biological child, B.N.W. Williams and Vraa agreed to B.N.W. living with each parent on a week-on-week-off schedule. According to Williams's declaration, from February 2018 to December 2022, I.H.L. accompanied B.N.W. to Williams's home for the week Williams was parenting B.N.W. In December 2022, Vraa informed Williams she planned to move to Bismarck with I.H.L. and B.N.W. Williams opposed the move and a disagreement arose amongst the parties. Vraa prevented Williams from seeing I.H.L. and did not allow I.H.L. to accompany B.N.W. to Williams's home.

[¶4] Williams filed a petition for nonparent visitation in March 2023. In his petition and declaration, Williams argued he was a consistent caretaker of I.H.L. and had a substantial relationship with I.H.L. Vraa moved to dismiss the petition in April 2023. The district court dismissed Williams's petition for failing to plead a prima facie case for nonparent visitation, finding Williams did not meet the required elements of a consistent caretaker. The court did not

expressly rule on whether Williams pleaded a prima facie case of having a substantial relationship with I.H.L. or that denial of visitation would result in harm to I.H.L. Williams appeals.

## II

[¶5] Williams argues he was entitled to an evidentiary hearing because he established a prima facie case for nonparent visitation as he was a consistent caretaker of I.H.L. and had a substantial relationship with I.H.L.

[¶6] We review de novo a district court's determination that a petitioner failed to plead a prima facie case for nonparent visitation. *Sailer v. Sailer*, 2022 ND 151, ¶ 5, 978 N.W.2d 699, as amended (Oct. 4, 2022). We independently review the record to determine whether sufficient facts were alleged to support a finding of a prima facie case. *Id.* at ¶ 9. "A prima facie showing is not a finding, but instead is a legal conclusion that a party has presented 'evidence strong enough, if uncontradicted, to support a finding in her favor.'" *Id.* at ¶ 5 (quoting *In re Est. of Clemetson*, 2012 ND 28, ¶ 8, 812 N.W.2d 388). In determining whether a party has established a prima facie case:

> We have explained that a prima facie case requires only enough evidence to permit a factfinder to infer the fact at issue and rule in the moving party's favor. A prima facie case is a bare minimum and requires facts which, if proved at an evidentiary hearing, would support a change of custody that could be affirmed if appealed. Allegations alone do not establish a prima facie case, and affidavits supporting the motion for modification must include competent information, which usually requires the affiant have first-hand knowledge. Affidavits are not competent if they fail to show a basis for actual personal knowledge, or if they state conclusions without the support of evidentiary facts.

*Id.* at ¶ 8 (quoting *Kerzmann v. Kerzmann*, 2021 ND 183, ¶ 8, 965 N.W.2d 427).

[¶7] The North Dakota Legislative Assembly adopted the Uniform Nonparent Custody and Visitation Act ("UNCVA") in 2019. 2019 N.D. Sess. Laws ch. 131, § 1. The UNCVA, found in chapter 14-09.4, N.D.C.C., governs nonparent visitation rights. Section 14-09.4-03(1), N.D.C.C., provides:

A court may order custody or visitation to a nonparent if the nonparent proves:

a. The nonparent:
    (1) Is a consistent caretaker; or
    (2) Has a substantial relationship with the child and denial of custody or visitation would result in harm to the child; and
b. An order of custody or visitation to the nonparent is in the best interest of the child.

To receive an evidentiary hearing, a nonparent must file a verified petition for custody or visitation alleging facts showing the nonparent is (a) a consistent caretaker, or (b) has a substantial relationship with the child and the denial of visitation would result in harm to the child. N.D.C.C. §§ 14-09.4-05, -06. The petitioner must also prove the visitation is in the best interest of the child. N.D.C.C. § 14-09.4-03(1)(b). The petition must state the relief sought and allege specific facts sufficient to show the petitioner meets the requirements as a consistent caretaker or having a substantial relationship with the child. N.D.C.C. § 14-09.4-06(1). Based on the petition, the district court must determine whether the nonparent has pleaded a prima facie case. N.D.C.C. § 14-09.4-07(1). Proving a prima facie case only requires the nonparent to show he or she is a consistent caretaker *or* has a substantial relationship with the child and denial of custody or visitation would result in harm to the child. *Id.* The district court shall dismiss the petition if it determines the nonparent failed to plead a prima facie case. N.D.C.C. § 14-09.4-07(2).

A

[¶8] To show a prima facie case of "consistent caretaker" status, the petitioner must present evidence sufficient to support each of the following elements:

2. A nonparent is a consistent caretaker if the nonparent without expectation of compensation:
    a. Lived with the child for not less than twelve months, unless the court finds good cause to accept a shorter period;
    b. Regularly exercised care of the child;

3

> c. Made day-to-day decisions regarding the child solely or in cooperation with an individual having physical custody of the child; and
>
> d. Established a bonded and dependent relationship with the child with the express or implied consent of a parent of the child, or without the consent of a parent if no parent has been able or willing to perform parenting functions.

N.D.C.C. § 14-09.4-03(2).

1

[¶9] Regarding the first element of N.D.C.C. § 14-09.4-03(2), Williams alleged I.H.L. lived with him for more than 12 months, from September 2014 to February 2016. Williams further alleged I.H.L. lived with him consistently on a week-on-week-off schedule spending approximately fifty percent of the time with him since the parties' divorce in 2018 until the summer of 2022. I.H.L. would live at Williams's home during the weeks Williams had parenting time with B.N.W. In the summer of 2022, I.H.L.'s father moved to Bismarck, and I.H.L. would spend part of the week with Williams and the weekends, Friday through Sunday, with his father.

[¶10] Section 14-09.4-03(2)(a), N.D.C.C., requires the nonparent to have "[l]ived with the child for not less than twelve months, unless the court finds good cause to accept a shorter period." The statute does not state whether the 12 months must be consecutive, nor does it indicate a basis for good cause. "Any provision in this code which is a part of a uniform statute must be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." N.D.C.C. § 1-02-13. "When we interpret and apply provisions in a uniform law, we may look to official editorial board comments for guidance." *Ferguson v. Wallace-Ferguson*, 2018 ND 122, ¶ 8, 911 N.W.2d 324 (quoting *Matter of Bradley K. Brakke Tr.*, 2017 ND 34, ¶ 12, 890 N.W.2d 549). Section 4(b) of the UNCVA is the corresponding section to N.D.C.C. § 14-09.4-03(2). The official comment to the UNCVA explains the 12-month requirement need not be consecutive months:

4

Regarding the first element, in subsections (b)(1), the 12-month period during which the nonparent lived with the child need not be consecutive months.

. . . .

. . . [I]f a nonparent was a caretaker of a child in the recent past, but the child is no longer living with the nonparent (such as because the child is back with the parent), the nonparent could still claim status as a consistent caretaker. Such an approach gives the act flexibility and does not force the nonparent to immediately seek relief after the nonparent has stopped living with the child or because the relationship between the parent and nonparent ended. . . . Determining whether too much time has elapsed before the nonparent sought relief will depend on multiple factors, including the child's age and whether significant contact between the nonparent and child has continued.

Unif. Nonparent Custody and Visitation Act § 4 cmt. (Unif. Law Comm'n 2018).

[¶11] The district court provided the following analysis on the 12-month requirement:

The Court questions whether or not Williams has satisfied the 12 month requirement set forth above. While technically Williams did reside with I.H.L. for 12 months, he did so over seven years ago. The Court questions whether or not the legislature intended to allow such a gap in time between the satisfaction of this requirement and the initiation of the action.

[¶12] We conclude the district court misapplied the law in determining Williams failed to meet N.D.C.C. § 14-09.4-03(2)(a). Here, although there was a gap in time since I.H.L. lived full-time with Williams, I.H.L. continued to live with Williams nearly fifty percent of the time during the years following Williams and Vraa's divorce. The official comment to the corresponding section of the UNCVA supports our interpretation that the 12-month requirement of N.D.C.C. § 14-09.4-03(2)(a) need not be consecutive months and need not be immediately preceding the petition when the nonparent caretaker continues significant contact with the child. Based on the duration alleged in the petition and declaration, I.H.L. has lived with Williams for not less than 12 months and there is good cause to consider Williams a consistent caretaker based on his

regular visitation with I.H.L. allowed by Vraa since the parties' divorce. Therefore, the court erred in determining Williams failed to show facts supporting the first element.

2

[¶13] Regarding the second and third elements, Williams argues over the last eight years he consistently cared for I.H.L. and made day-to-day decisions for him.

[¶14] In *Sailer*, we discussed whether a petitioner pleaded a prima facie case for nonparent visitation on the basis of being a consistent caretaker. 2022 ND 151, ¶¶ 9-11. We concluded "the children staying with the grandparents for an occasional weekend and the grandparents periodically caring for their needs failed to establish a prima facie case that the grandparents were consistent caretakers." *Id*. at ¶ 9. The grandparents asserted in their petition and declarations that they "pick[ed] the children up and drop[ped] them off as needed, wash[ed] their clothes, cut their fingernails, spen[t] holidays and special events together, and even [bought] groceries for the children." *Id*.

[¶15] Here, unlike *Sailer*, the petition and declaration alleged specific instances of ongoing regular care of the child. Williams alleged he cared for I.H.L. since September 2014 and provided specific instances of such care. Williams alleged: he cared for I.H.L. and adopted the role of a father figure since I.H.L. was two years old; he helped with potty training; he taught I.H.L. to tie his shoes; he attended all of I.H.L.'s soccer games and parent teacher conferences; he transported I.H.L. to see his father; he was active in raising, teaching, and supporting I.H.L. and provided discipline while in his care; he facilitated I.H.L. developing close bonds with Williams's family through regular family gatherings, dinners, and attending church together; he attended I.H.L.'s baptism when he was nine years old and considered it a very special day; he voluntarily paid for "food, clothing, winter gear, school supplies, CLC, extracurricular activities, and gifts for [I.H.L.]." Williams alleged that Vraa asked to use Williams's home address as I.H.L.'s residence for the purposed of I.H.L. attending the same school as B.N.W.

[¶16] Williams's allegations support a showing that he regularly exercised care of I.H.L. and made day-to-day decisions for I.H.L. when he lived with him full-time and thereafter nearly every other week for a period of years. Williams was also involved in the decision-making process of where I.H.L. attended school, and accommodated Vraa's request to use his home address for the child. Vraa did not present a declaration refuting Williams's allegations. The district court did not determine whether Williams failed to plead the second and third elements. We conclude Williams presented uncontradicted evidence adequate to support a determination in his favor on the second and third elements.

3

[¶17] Regarding the fourth element of N.D.C.C. § 14-09.4-03(2), Williams alleged that he took on a father-figure role for I.H.L. since meeting him in 2014; I.H.L. referred to Williams as "dad" for the last eight years; and Williams has been "active in raising, teaching, and supporting him in every way and IHL has regularly come to [him] for help or guidance."

[¶18] This Court has not previously interpreted the fourth element of N.D.C.C. § 14-09.4-03(2). Section 14-09.4-03(2)(d), N.D.C.C., requires the nonparent to have a "bonded" and "dependent" relationship with the child with the express or implied consent of the child's parent, if that parent is performing parenting functions. The statute does not define the terms "bonded" and "dependent." The official comment to the UNCVA provides explanations of the terms "bonded" and "dependent," stating:

> Regarding the fourth element, the term "bonded" refers to the closeness of the relationship. The term "dependent" refers to the degree to which the child relies upon, and is in need of, the nonparent.
>    . . . .
>    . . . In addition, the "consistent caretaker" provision does not require that the individual has undertaken "full and permanent responsibilities of a parent."

Unif. Nonparent Custody and Visitation Act § 4 cmt. (Unif. Law Comm'n 2018).

[¶19] The district court provided the following analysis on the fourth element: "*During the entire time that William[s] claims to have spent with I.H.L., I.H.L. has had two parents who have consistently been involved in his life. They are the individuals who have made all major and most all other decisions regarding I.H.L.*" (Emphasis added.) The court further determined the activities Williams claimed to engage in with I.H.L. did not rise to the level of those contemplated by N.D.C.C. § 14-09.4-03. The court stated, "Simply because Williams has been another person who has voluntarily cared for I.H.L. does not mean that he has stepped into the role of a consistent caretaker as defined by the statute." The district court determined Williams failed to show a bonded and dependent relationship with I.H.L.

[¶20] The allegations made by Williams indicate a closeness between Williams and I.H.L. and demonstrate that I.H.L. relies upon, and is in need of, Williams. Furthermore, Williams's allegation that Vraa used Williams's home address as I.H.L.'s residence, instead of her own, to allow I.H.L. to attend a certain school, as well as Vraa's agreeing to I.H.L. living with Williams on a week-on-week-off basis, reflects that he made day-to-day decisions for I.H.L. and also shows Vraa's implied consent to Williams's relationship with I.H.L. over a long period of time. Vraa did not present any evidence disproving Williams's allegations.

[¶21] In determining whether a prima facie case has been established, the district court must accept the truth of the moving party's allegations. *Kartes v. Kartes*, 2013 ND 106, ¶ 9, 831 N.W.2d 731. It appears the court relied on factual allegations made in Vraa's brief supporting the motion to dismiss regarding who I.H.L.'s consistent caretakers were, and made inferences based upon those facts to conclude Williams failed to show a prima facie case for nonparent visitation. A trial court can find the moving party has failed to bring a prima facie case only if the opposing party presents counter affidavits conclusively establishing the allegations of the moving party have no credibility, or if the movant's allegations are insufficient, on their face, to justify custody modification. *Tank v. Tank*, 2004 ND 15, ¶ 9, 673 N.W.2d 622. Here, the court misapplied the law by not considering facts pleaded by Williams as true, and considering facts alleged by Vraa which were not supported by declarations.

8

We conclude the court erred in determining Williams failed to show the fourth element.

[¶22] We conclude the unrefuted evidence Williams presented established a prima facie case of a consistent caretaker that could justify nonparent visitation, warranting an evidentiary hearing. Therefore, the district court erred in dismissing Williams's petition for nonparent visitation.

B

[¶23] Williams also argues he was entitled to an evidentiary hearing because he had a substantial relationship with I.H.L. and denial of visitation would result in harm to the child.

[¶24] The district court did not expressly address whether Williams met the requirements for nonparent visitation based on a substantial relationship with the child. However, by dismissing the petition it impliedly concluded no prima facie case was pled. *See Sailer*, 2022 ND 151, ¶ 9.

[¶25] To show a prima facie case under the second basis for nonparent visitation, the nonparent must present evidence sufficient to support a showing of a substantial relationship with the child and that denial of visitation would result in harm to the child. N.D.C.C. § 14-09.4-03(1)(a)(2).

[¶26] A nonparent must first show they have a substantial relationship with a child which requires:

    a.    The nonparent:
        (1)    Is an individual with a familial relationship with the child by blood or law; or
        (2)    Formed a relationship with the child without expectation of compensation; and
    b.    A significant emotional bond exists between the nonparent and the child.

N.D.C.C. § 14-09.4-03(3). Williams did not allege he is a person with a familial relationship with I.H.L. by blood or law. He did allege he has formed a relationship with I.H.L. without expectation of compensation. This allegation

is supported by Williams's declaration and is not disputed. As to whether there is a significant emotional bond between the nonparent and the child, Williams alleges he took on a father figure role to I.H.L., and that I.H.L. refers to him as "dad" even after Williams and Vraa's divorce. Williams has shown he has a substantial relationship with I.H.L.

[¶27] The second prong for nonparent visitation based on a substantial relationship requires the nonparent to show that denial of visitation would result in harm to the child. N.D.C.C. § 14-09.4-03(1)(a)(2). "'Harm to a child' means significant adverse effect on a child's physical, emotional, or psychological well-being." N.D.C.C. § 14-09.4-01(5). "'Harm to a child' can be physical, emotional, or psychological. The harm must result in a 'significant adverse effect.' Testimony from a mental health professional can be helpful – but not required – to show the effect." Unif. Nonparent Custody and Visitation Act § 2 cmt. (Unif. Law Comm'n 2018).

> In claims for either custody or visitation, a nonparent with a substantial relationship with the child must show harm, but the focus of the evidence will vary. In general, a nonparent seeking custody must show that a change in the child's custody is necessary to prevent harm to the child, *while a nonparent seeking visitation will need to show that continued contact with the nonparent through visitation is necessary to prevent harm*.

Unif. Nonparent Custody and Visitation Act § 4 cmt. (Unif. Law Comm'n 2018) (emphasis added).

[¶28] Williams alleged in his petition and declaration denying him visitation with I.H.L. would cause I.H.L. lasting negative effects because I.H.L. expressed emotional pain from not being able to see Williams. Williams alleged that he saw increased anxiety in both I.H.L. and B.N.W. when Vraa prevented I.H.L. from seeing Williams and did not allow I.H.L. to accompany B.N.W. to Williams's home, stating: "IHL and BNW are used to being together and I have noticed an increase in anxiety in both kids and BNW expressing great sadness because IHL is not with us during her time with me." Williams further alleged the sadness he observed in I.H.L. when Williams was prevented from seeing I.H.L., stating: "I feel that completely removing me from IHL's life will

10

negatively affect him due to the long-lasting close relationship we have. *He has cried to me about Stefaney taking him away from me and he is hurting*." (Emphasis added.)

[¶29] This Court analyzed "harm to a child" in *Sailer*. 2022 ND 151, ¶¶ 10-11. In *Sailer*, we concluded the grandparents seeking nonparent visitation failed to show a prima facie case under N.D.C.C. § 14-09.4-03(1)(a)(2) because they did not plead sufficient facts to support the "harm to a child" element. *Id*. at ¶ 10. The grandparents alleged in their petition that "further denial of visitation by [the mother] would be detrimental to the minor children in that their emotional and behavioral development may be affected," but failed to support their conclusory statements with any evidentiary facts. *Id*. at ¶ 11. "[F]acts showing that the children would 'smile, wave, and often times throw kisses' at the grandparents when they attended their sporting events would not support a finding that denial of visitation would have a significant adverse effect on the children's well-being." *Id*. We held the petitioners' failure to plead sufficient facts showing the "harm to the child" element is dispositive of the appeal when the petition is based on a substantial relationship with the child. *Id*.

[¶30] Here, Williams alleged seeing an increase in anxiety in I.H.L. after Vraa prevented him from seeing I.H.L. and did not allow I.H.L. to accompany B.N.W. to Williams's home. Williams alleged I.H.L. cried to him about Vraa taking him away from Williams and that I.H.L. is hurting.

[¶31] Unlike *Sailer*, Williams's petition includes minimally adequate information that, if proven, could show denial of visitation would result in harm to I.H.L. Williams's allegations of observing anxiety and crying on the part of I.H.L., following Vraa's changes to I.H.L.'s visitation with Williams, tend to show a significant adverse effect on I.H.L.'s physical, emotional, or psychological well-being.

[¶32] We conclude the unrefuted evidence Williams presented established a prima facie case of having a substantial relationship with I.H.L. that could justify nonparent visitation, warranting an evidentiary hearing.

## III

[¶33] We reverse and remand for an evidentiary hearing consistent with this opinion.

[¶34] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr